## SUMNER C. WELCH
### V.
### THE PEOPLE OF THE STATE OF ILLINOIS.

*Jurisdiction—Contempt—Common Law Proceedings—Denial by Affidavit —Parol Evidence—Practice—Concurring Opinions.*

1. Where the respondent in a common law proceeding, in answer to a rule to show cause why he should not be attached for contempt, denies the entire charge by affidavit, he is entitled to his discharge. It is improper to hear oral evidence to contradict such affidavit.

2. It *seems* that the jurisdiction of this court, in criminal contempts, is not limited to an examination of the jurisdiction of the court below.

[Opinion filed April 17, 1889.]

In error to the Superior Court of Cook County; the Hon. Kirk Hawes, Judge, presiding.

Messrs. C. W. Hardy and William J. Hynes, for plaintiff in error.

The contempt charged was criminal and governed by the same rules of evidence as a criminal case. Pitt v. Davidson, 37 N. Y. 235 ; Rapalje on Contempts, p. 25, Sec. 21.

The contempt charged was constructive, not direct. Stewart v. The People, 3 Scam. 395; Rapalje on Contempts, Sec. 22, p. 26. (See also note, foot of page 27.)

The court had no power or jurisdiction to hear oral evidence.

In the case of Jackson v. Smith, 5 Johns. 115, an attachment for contempt was issued against Brown, a tenant in ejectment, for not paying costs. Brown petitioned for and was discharged as an insolvent. Jackson then sued Smith, the sheriff, for an escape. The court held: "The attachment, by virtue of which Brown had been arrested, was nothing more than a process to bring him into court to answer the interrogatories which, upon the return of it, were to be exhibited against him. This is necessary to be done in every case before a party can be convicted of a contempt. If the answers to the interrogatories show that no contempt has been committed, the party is entitled, at law, to his discharge."

In United States v. Dodge, 2 Gall. 312, which was an attachment for contempt for forcibly rescuing a person from the United States marshal, the court said: "We can not receive any collateral evidence as to the offense, but if the respondent by his affidavit and answers on oath to interrogatories proposed by the district attorney discharges himself of the contempt, no further proceedings can be had against him on the attachment. If from any collateral evidence it should appear that there is reason to believe the respondent has perjured himself, we will recognize him to answer at the next term of the court, to such matters as may be found against him."

" If one brought in on contempt denies all upon oath, he is of course discharged of the contempt ; but if he has forsworn

Welch v. The People.

himself he shall be prosecuted for the perjury." Rex v. Sims, 12 Mod. 511. (A. D. 1701); *Re* Pitman, 1 Curtis, 186.

The doctrine and practice as laid down in Blackstone, volume 4, page 288, is this : In chancery, " after the party in contempt has answered the interrogatories, such his answer may be contradicted and disproved by affidavits of the adverse party. Whereas, in the courts of law, the admission of the party to purge himself by oath is more favorable to his liberty, though perhaps not less dangerous to his conscience ; for, if he clears himself by his answer, the complaint is totally dismissed." See Conover v. Wood, 5 Ab. Prac. 84; State v. Earl, 41 Ind. 464 ; Burke v. State, 47 Ind. 528.

In Crook v. People, 16 Ill. 534, the doctrine is clearly laid down that " In Underwood's case, 2 Humph. 48, the court lays down the proper distinction between the course of practice in courts of law and equity, and mere contempts and acts that are treated as contempts for the enforcement of orders and decrees, as part of the remedy sought. In cases of common law, the defendant will be discharged, if, by his answer to interrogatories filed, he makes such a statement as will free him from the imputed contempt, and that opposing testimony will not be heard;" and, " in cases in chancery, the truth of the defendant's statement in reply to interrogatories filed may be controverted on the other side, and the whole matter be inquired into and ascertained by the court."

An examination of Humphrey's case will show that it fully bears out the text of the case of Crook v. The People, last cited. And again, in Buck v. Buck, 60 Ill. 105, the Supreme Court says: " This was a proceeding against the appellant, by attachment for contempt, in not complying with a decree of the Circuit Court of Kane county, in a suit for divorce, ordering him to support and educate an adopted child of the parties.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

In the court below, interrogatories had been filed, to which defendant had filed his answer. The court ruled that, notwithstanding the answer, the defendant must purge himself of the contempt in open court, whereupon the defendant was sworn and testified. This ruling of the court is assigned as

error. A difference obtains between the practice, in this respect, in courts of law and in courts of equity. In the former, if the defendant clears himself by his answer, he will be discharged, and the complaint totally dismissed; whereas, in the courts of equity, after the party has answered the interrogatories, his answer may be contradicted and disproved by the adverse party."

Mr. CHARLES E. POPE, for defendant in error.

That the sole question for this court to consider is as to whether the Superior Court had jurisdiction, we believe to be a correct statement of the law.

It is held by many courts that at common law no appeal or writ of error can be taken from a commitment for contempt. Rapalje on Contempt, p. 198, Sec. 141, and many cases cited in foot notes to section 141. What has been held by our Supreme Court?

In Clark v. The People, Breese, 340 (Beecher's Ed.), our Supreme Court decided that the power to punish for contempt is incident to all courts of justice, independent of statute ; and the exercise of this power, resting in the sound discretion of the court, can not be reviewed by the Supreme Court, and that the magistrate (a justice of the peace) having had jurisdiction to impose the fine, the Circuit Court properly refused to inquire into the nature of the contempt and very properly dismissed the appeal.

In Stuart v. The People, 3 Scam. 395, the court held that " it is declared by our statute, in conformity with the common law principle, that in all criminal cases not capital, the writ of error is a writ of right, and must issue of course. This proceeding for a contempt is in the nature of a criminal proceeding, and has been so adjudged in the case of Clark v. The People, Breese, 340."

The court in the Stuart case further decided that the Clark case was not decisive, because the justice in the Clark case had not exceeded his jurisdiction, and that there was no law allowing such an appeal as was taken there (Opinion, p. 403), and continuing, said, "upon the authority of this case (Kearney

*ex parte*, 7 Wheat. 88), which is relied on by the attorney-general, we are justified in concluding if the Cook Circuit Court had no jurisdiction the judgment should be reversed. Had it this jurisdiction ? "

After reviewing the facts in the case, the court concluded (p. 405):

" We are satisfied that no contempt was committed of which that court could take jurisdiction, and accordingly reverse the judgment."

Speaking of the right to appeal, or to a writ of error from a judgment for contempt, our Supreme Court, by Justice Scates, said, in *Ex parte* Thatcher, 2 Gilm. 167, 170 :

" It is indeed denied that any appeal or writ of error lies from its (the court's) judgment for contempt by any court. I will not undertake to decide the general question, but the power has its limits. The court may not treat any and every act as a contempt, and I have no doubt that the Appellate Court may revise and reverse its judgment when it exceeds its jurisdiction by treating that as a contempt which in law is no contempt and can not be. The supervision will be to ascertain that fact."

In The People v. Neil, 74 Ill., pages 68, 69, our Supreme Court said, citing the Stuart case :

" The people are not allowed an appeal or writ of error in a criminal case. Besides, it is the general rule that the sole adjudication for contempt and the punishment thereof belong exclusively, and without interference, to each respective court."

Haines v. The People, 97 Ill. 161, was a writ of error taken on a commitment by the Probate Court for the neglect of an administrator to make distribution of an estate pursuant to the order of said Probate Court. The Supreme Court there decided that an essential element constituting the offense for which the commitment was made did not exist; in other words, that the court committed for contempt, when the offense was not a contempt of court. It was admitted by all parties that this element, being a demand upon the adminis-trator for the moneys, had not been made. The Haines case

merely held to the doctrine maintained in the Thatcher case viz., that it will reverse when a *nisi prius* court has exceeded its jurisdiction by treating as a contempt that which, in law, is no contempt, and can not be.

Did the court err in holding that the affidavit of Welch did not purge him of contempt? Counsel claim that the court erred in not discharging Welch on his affidavit, and wrongly heard other evidence to dispute Welch's sworn answer. As I have before said, the record clearly and decisively shows that no objection was raised to the introduction of such other evidence till the second day of the trial, viz., on March 8, 1888, but the prosecution in effect was challenged to produce it, and not till after a mass of oral evidence was introduced, and till May 23, 1888, over two weeks after the trial had begun, did Mr. Hardy make his motion to discharge Welch, on the ground that Welch, by his affidavit, had purged himself of contempt, even after this respondent took oral evidence on his own behalf. This is a clear waiver of any right to object to the method of procedure allowed by Judge Hawes. Counsel can not successfully claim that any question of jurisdiction was involved in hearing oral evidence. In no event can anything but error be claimed in adopting one method of procedure or practice rather than another.

Their own authorities show this, and the authorities cited by them show that where reversals were had because oral evidence was introduced, the motion to discharge was entered before the taking of the oral proof; a very different state of things from that shown in the case at bar.

In Buck v. Buck, 60 Ill. 105, and in Crook v. People, 60 Ill. 534, both chancery cases, and both cited by respondents' counsel, the question was whether in civil contempts it was the correct practice to hear oral evidence. The Supreme Court treated this question in both of said cases as merely a point involving possible error and not jurisdiction, and in neither case was it decided as to whether any error in this regard was sufficient to reverse, both cases being affirmed.

But the hearing of oral evidence involved no error, even if objection had been made in ample time, a motion duly made

for the discharge of We'ch, and even though respondent had not also taken oral evidence in his behalf. Attempting to corruptly approach a jury is direct contempt of court. The Superior Court could only punish for direct contempt. In direct contempt the sworn answer of a respondent can be controverted.

Mr. Hardy, in his argument, page 3, claims that Stuart v. The People, 3 Scam. 395, decides that bribing a juror is constructive contempt and not direct contempt. I submit that this is a total misapprehension of the scope of the decision.

In the Stuart case the Supreme Court decided that the statute then in force affirmed the power of the court to punish for contempts committed in the presence of the court, or for direct contempt, in this respect merely affirming a right inherent in all courts, that of self-preservation, of which the Legislature can not deprive the courts. That the act of the Legislature referred to took away the right to punish for all contempt except direct contempt. In other words, that the courts had no power to punish for constructive contempt. But that in the class of contempts for which the courts could inflict punishment were necessarily included all acts calculated to impede, embarrass or obstruct the court in the administration of justice. Such acts would be considered as done in the presence of the court.

I wish to call your Honor's particular attention to the point made in this decision, that within this class of direct contempts, over which the court had undoubted jurisdiction, the Supreme Court, evidently on the ground of self-preservation, included anything which directly tended to impede, embarrass or obstruct the court in the administration of justice, considering the act as done in the presence of the court, and, therefore, within the category of direct contempt, viz., " such as one offered to the court while sitting as such, and in its presence." Stuart v. People, on p. 404, 405.

The court must have, if it continues to be a court, the power to investigate and punish as a direct contempt, in spite of the perjured denial of a respondent, anything which obstructs and prevents the proper administration of the busi-

ness of the court. This principle was even extended to the publication of proceedings while a case was pending. Would the bribing of a juror be less disastrous to the administration of the court than a disturbance in court or discourteous words to the court's face? Suppose one should stand within the court house, and without the door of the court room, and shoot down jurors with a revolver, or meet them in the corridors of the court house, and corruptly proffer gold; would such acts be less disastrous in effect than a disturbance in court or open disrespect to the judge on the bench?

How would it be possible to conduct the business of the court if the sworn denial of a jury briber, of whose guilt there could be no possible doubt, should be a bar to the summary punishment and commitment of the offender, and only the circuitous, doubtful and difficult remedy of an indictment and conviction for perjury was left to the court?

My position on this point is, that a juror is a part of the machinery of the court, a part of the court itself, originally the court itself; that attempts to bribe a juror are acts done in the presence of the court, or, putting it in the language of our Supreme Court: " Such acts would be considered as done in the presence of the court."

Jurors " form a portion of the tribunals by which the law of the land is administered." Reg. v. Martin, 5 Cox's Criminal Cases, 356, 359.

From motives of self-preservation our courts must consider the bribery of jurors as direct contempts, so far as the method of ascertaining and punishing offenders is concerned, and that a sworn denial of the offense can not be regarded as purging the offense, unless founded on truth and not perjury.

I am well aware that courts differ widely in their definitions of what is direct and what constructive contempts; but I contend that the distinction and definition laid down by our Supreme Court is the only logical and satisfactory definition of direct contempt, viz.: acts committed in the presence of the court, or which so impede, embarrass or obstruct the court in the administration of justice that necessarily they must be considered, as a matter of self-preservation to the court, as

Welch v. The People.

done in the presence of the court. The distinction between direct and constructive contempts can not be based upon the point that in the one case the court saw the act and in the other did not. Many an act which would be admitted by all to be direct contempt the judge might not have seen in spite of its commission in open court, and evidence would have to be offered to convey information to the judge as to what was done. Direct contempt must be held to be that character of contempt in which the act, from the necessity of self-preservation, must be considered to have been done as in the presence of the court, so as to enable the court to punish without being barred from proceeding by the perjured answer of the culprit.

The remarks of the Supreme Court in Crook v. The People, 16 Ill. 534, and Buck v. Buck, 60 Ill. 105, and in Underwood's case, 2 Humph. 48, cited in the Crook case, are mere *dicta*, so far as indicating what the common law practice and procedure in contempt cases is. They were all chancery cases, and must also be held to refer to cases of pure constructive contempt. The reasons for requiring a court to regard the answer of a defendant, even though perjured, as discharging from contempt, never existed in Illinois. The causes not existing, the rule of law ceases to exist. In olden days the answer was held to purge from contempt, lest the liberty of the subject should depend on the decision of the appointee of the crown—the court. Our judiciary is elected from the body of the people, and is as much a part of the people as the jury. Story v. The People, 79 Ill. 45, 52.

The practice on this point is far from uniform in the United States.

In New Hampshire the rule is to take oral evidence.

In State v. Mathews, 37 N. H. 450, 456, the court said: "The better and more sensible rule, however, is apprehended to be, in accordance with the practice in this State, that proofs upon both sides, including the answers of the respondent himself, are taken, and the court thereupon determine, from a consideration of the whole evidence, the guilt or innocence of the accused."

To the same effect, see Bates' case, 55 N. H. 325.

In Dobbs v. State, 55 Ga. 272, the answer was traversed and evidence taken.

In Crow v. State, 24 Tex. 12, 14, it was decided that "the court is not confined to the answer, but may hear other evidence upon the question of contempt involved."

In Sinnott v. The State, 11 Lea (Tenn.), 281, 282, "The plaintiff in error was attached for contempt of the court in each case. Neither of said acts for which he was attached were committed in the court house or in the actual presence of the court. The attorney-general filed specifications in each case. The plaintiff in error moved to quash the specifications filed, which motion was overruled by the court, and having filed his answer to said specifications the court proceeded to hear the case, and having heard the testimony adjudged the defendant guilty as charged in the specifications."

The offense was packing a jury, but not in the court house or in the immediate presence of the court.

In Henry v. Ellis, 49 Iowa, 206, oral evidence, it was decided, might be heard.

The question involved in the discussion on this point is, not only whether the court below pursued the proper method of procedure, but how far such method of procedure is left to the discretion of the *nisi prius* court, and will not be reviewed.

The Bates case, 55 N. H. 325, 326, cited by counsel for respondent, is directly in point. Foster, C. J., says:

"The proceeding (for contempt) is, in all cases, summary before the judge without the intervention of a jury.   *   *   *   The procedure is various in different jurisdictions; and I apprehend that the discretion of the court is very broad, and will seldom be revised upon writ of error or appeal, so essential is it to the maintenance of the dignity of the court and supremacy of the law that the offense should be punished summarily and with little delay."

GARY, J.   The act entitled "An act to revise the law in relation to the common law," approved March 5, 1884, and which provides that "the common law of England, so far as the

same is applicable and of a general nature,    *    *    *    shall be the rule of decision, and shall be considered as in full force until repealed by legislative authority," is declaratory of what has been the law by which the inhabitants of the territory now constituting the State of Illinois have been governed, and of the rights, privileges and immunities to which they have been entitled ever since Anglo-Saxon civilization first obtained a foothold in it.

Upon the question of what the common law of England is upon any subject upon which they write, the concurring testimony of Blackstone and Hawkins, the first in his Commentaries, and the last in his Pleas of the Crown, is conclusive. Blackstone, writing of contempts, having described the preliminary proceedings and then referring to courts of equity, proceeds: "And thereafter the party in contempt has answered the interrogatories, such his answer may be contradicted and disproved by affidavits of the adverse party; whereas, in the courts of law, the admission of the party to purge himself by oath is more favorable to his liberty, though perhaps not less dangerous to his conscience; for, if he clears himself by his answers, the complaint is totally dismissed."

Hawkins states the same, in somewhat similar language. The purging of which they speak is his answer to written interrogatories, taken by a master of the court. 3 Bl. Com. 288; 2 Hawk. P. C. 207, and notes; 3 Burr. 1329. Three different times, the first and last separated by an interval of over twenty years, the Supreme Court of this State have recognized the rule so laid down as correct. Crook v. The People, 16 Ill. 534; Buck v. Buck, 60 Ill. 105; Story v. The People, 79 Ill. 45. Except by statute, there is no legitimate mode by which the judge of a court of law or equity may be informed of facts upon which he is to act by the oral testimony of witnesses delivered in his presence. The authorities, or the *dicta*, upon which the counsel for the defendants in error ask this court to assume the functions of the Legislature and change this "rule of decision," in the order cited are: State v. Mathews, 37 N. H. 450, a divorce case, and the contempt was in violating an injunction; Bates' Case, 55 N. H. 325, in which the only thing decided is that exceptions by Bates to

evidence which had been admitted against him were well taken, and they were sustained; Dobbs v. State, 55 Ga. 272, where the court below had heard testimony against Dobbs, and the Supreme Court reversed the judgment, with no allusion to the propriety of so doing; Crow v. State, 24 Tex. 12, where there was a jury trial, and the Supreme Court said the proceedings were erroneous but that Crow had no appeal, and the appeal was dismissed; Sinnott v. State, 11 Lea (Tenn.), 281, in which no question touching the point in issue was made; and the last, Henry v. Ellis, 49 Iowa, 205, in which the court did have before them, and did decide, the point that witnesses might, as in a case of libel, be examined as to how an ambiguous newspaper publication, which Henry acknowledged to be his act, was understood by the readers. The court declines to say that there was any contempt in the case, as Henry, in his application for a *certiorari*, upon which application the decision was made and the writ refused, had not raised the question. There was no discussion of the law or reference to authorities in the case.

I have not searched for any additional support to the position of the defendants in error, but assume that the field has been exhausted by the industry of the counsel. Every case except the one from Iowa presents mere *dicta*, which certainly are no more authoritative than the thrice written *dicta* of the court whose decisions are paramount as to what the law of this State is. The claim that the loose case from Iowa overbalances the unbroken current of English authority, and the many cases in accord therewith in the United States, would be too preposterous for serious consideration. Jackson v. Smith, 5 Johns. 115; U. S. v. Dodge, 2 Gall. 312; *In re* Pitman, 1 Curtiss (U. S.), 186; Conover v. Wood, 5 Abb. Pr. 84; State v. Earl, 41 Ind. 464; Burke v. State, 47 Ind. 528.

The plaintiff in error, in answer to the rule to show cause why he should not be attached for contempt in attempting to influence a juror, by his affidavit explicitly, without evasion, denied the whole charge in detail. Without the corroborating affidavits which he presented that denial should have ended the inquiry; unless, indeed, the court called upon him

to answer, under oath, specific written interrogatories, which would have been, manifestly, of no practical effect.

The court had jurisdiction of the subject-matter and of the person of the plaintiff in error, but it had no jurisdiction of the mode of proceeding. This distinction is not easily defined (Lange v. Benedict, 73 N. Y. 12) but is easily illustrated. The criminal court, having before it a defendant indicted for an offense, however trivial, has no authority, without his consent, to try the issue of fact. If he pleads guilty, the court may fix the punishment. If he denies the charge against him, the court, unaided, can go no further. The sturdy principles of the common law exempt him from submitting an issue of fact to any other tribunal than a jury of his peers, with the right of challenge. People v. Hanchett, 16 Legal News, 320, is as instructive and almost as persuasive, as authority, as if the eminent judge who decided it had sat where he did when he delivered the opinion in People v. Whitson, 74 Ill. 20.

All the further proceedings, by examining witnesses, were without warrant of law. There is in the record no plausible foundation for the position that they were by consent. The judgment should be reversed.

*Judgment reversed.*

GARNETT, P. J. I concur in reversing the order of the Superior Court, but, to guard against any inference that may be drawn as to the limit of the jurisdiction of this court in this class of cases, I think brief reference should be made to another feature presented by counsel for the people. It is ·denied that this court, in criminal contempts, can examine anything beyond the question of jurisdiction of the court below. Whether that rule obtains when the act constituting the contempt is committed in the actual presence of the court, we need not determine. That view was adopted in Clark v. The People, Breese (Beecher's Ed.) 340, where the fine was imposed for an act in the presence of the justice. There is no present necessity for the expression of doubt concerning the authority of that case, as it was distinguished from a case of constructive contempt in Stuart v. The People, 3 Scam. 395, where the

court recognized its duty of obedience to the statute which declared a writ of error a writ of right in all criminal cases not capital, and where Breese, J., delivering the opinion of the court, said:

"Perilous, indeed, would be the condition of the citizen if he had not the privilege in such a case to have it reviewed by another tribunal, and defective would be our jurisprudence if it afforded no means of relief." It is true, as Rapalje, in his work on Contempts, Sec. 141, says, that the judgment of every superior court of record, in cases of contempt, is final and conclusive, and not reviewable by any appellate tribunal unless specially authorized by statute; but in Thompson on Trials, Sec. 124, the application of the rule is limited to cases of contempt committed in the presence of the court.

Foreseeing the difficulty of confining the inquiry in this case to the bare question of jurisdiction if the offense charged should be held to be a constructive contempt, an argument has been presented to prove that the act charged against Welch was a direct contempt, committed in the *presence* of the court.

There is no pretense that the attempt to bribe the juror was made in the actual presence of the judge, or while the court was actually in session. But for the purpose of bringing this case within the class of direct contempts, reliance is placed upon an expression of the court in Stuart v. The People, to the effect that all acts calculated to impede, embarrass, or obstruct the court in the administration of justice would be *considered* as done in the presence of the court. The opinion, however, does not say that every such act would be a direct contempt; and that the writer of the opinion meant that such offenses, not committed in the actual presence of the court, would nevertheless be constructively in its presence, is manifest from his definition, viz: " Contempts are either direct, such as are offered to the court while sitting as such, and in its presence; or constructive, being offered, not in its presence, but tending, by their operation, to obstruct and embarrass, or prevent the due administration of justice."

In commenting on this question, the text writers above referred to make no distinction between civil and criminal contempts. Both classes have been uniformly treated in the

Welch v. The People.

same manner by the Supreme Court of this State, as shown by the decisions cited in the opinion of Mr. Justice Gary, no case having yet arisen where the court has refused to review the action of the Circuit Court or Superior Courts, on questions other than that of jurisdiction, in cases of constructive contempt.

There is no such limitation as contended to the power of this court.

MORAN, J.   Upon full and careful consideration of the authorities, I am in complete accord with the opinion of Mr. Justice Gary herein as to the rule of procedure in contempts of a criminal nature.   There can be no doubt that the rule and practice is as stated by him, nor can there be any question that it is error for a court to depart from the authorized and established practice in such a contempt proceeding.   In this connection I wish to say that on an occasion that will be remembered by the bar, for it excited general interest, I made the mistake of adopting the practice which was pursued in this case.   I did it on but slight investigation as to the correct practice, but I am unwilling to condemn the error of a brother judge without at the same time acknowledging that I committed the like error myself, particularly as my action in that regard may have had some influence in leading him to follow the same practice.

While the rule of practice is as stated, and while the courts are undoubtedly bound by it as a rule of procedure, it is a rule of common law practice which, in my opinion, does not in our day and generation tend to the promotion of public justice.   It is notorious that attempts have been made, not unfrequently, to influence the result of jury trials in this country by corrupting juries.   Many persons have an abiding conviction that certain classes of litigants rely for success more on their ability to corrupt jurors than on the merits of their particular cases.   It is disclosed by the record that the investigation carried on in this case has exposed one person, at least, as being engaged in the nefarious business, and compelled him to seek safety in flight.   There have been exposures from time to time of attempts to bribe jurors, and although there

have been trials, so far as I can recall, there has never been a conviction in the Criminal Court for such an offense.

All criminal prosecutions have failed, and I believe that the chief restraining influence of jury bribers has been the fear of contempt proceedings for their punishment. It is essential to the pure administration of justice that attempts to corrupt jurors should be summarily and fully investigated, and the guilty persons exposed to public execration and subjected to prompt punishment. There is a plain distinction between acts which tend to corrupt the tribunal and those which merely obstruct its judgment by opposition, or embarrass the execution of its orders or decrees by circumvention or fraud. To impose on the court by false documents or perjured evidence is not so reprehensible in itself, nor so far-reaching or injurious in its consequences as to seduce the court or the jury to a false judgment by means of a bribe. In the one case, justice may be misled, to the wrong of a particular party, but in the other, she is herself debauched, to the wrong and injury of the community, and the dangerous weakening of the confidence of the people in one of the most cherished of our institutions. Therefore, contempts of this particular nature should be made exceptions, and the rule of procedure made the same by statute as that which governs in civil contempts in chancery.

Contempt proceedings against jury-fixers under the common law rule by which the courts are now bound, are idle. A man who will bribe a juror, will, as a rule, purge his contempt by denying the fact in an affidavit, and take his chances in a trial for perjury in the Criminal Court, and will generally go unwhipped of justice. The courts can only declare the law as they find it, and follow it as it is. The Legislature alone can make new laws or change existing methods of trial and rules of procedure, and to the Legislature, those who would make contempt proceedings for jury-bribing effective, must look for a change of the common law rule.

The principles of the common law which guards the citizen against the exercise of uncontrolled judicial discretion, are unquestionably wise, and should be maintained; but, in my opinion, there is, under our system of elective judiciary, less danger to be apprehended from the tyranny of excesses of

Welch v. The People.

judges than from the practically unrestrained operations of jury-fixers.    As for trial by jury, unless we are able to secure and preserve it uncorrupted, it were better to abolish it altogether.

What I have said is without reference to the merits as presented by the record.    The point on which we have been compelled to decide the case has rendered the examination of the evidence unnecessary.