72   171
86   236

# A. J. Kyle v. The People, etc.

1.  Contempts—*Direct and Constructive.*—Contempts are either direct, such as are offered to the court while sitting as such, and in its presence, or constructive, but tending by their operation to obstruct, embarrass or prevent the due administration of justice.

2.  Same—*Power of Courts to Punish.*—Courts have power to punish direct and criminal contempts, and this power necessarily includes the power to punish indirect, consequential or constructive contempts, such as are acts calculated to impede, embarrass or obstruct the court in the administration of justice.

3.  Same—*Jurisdiction in Error.*—A sentence of imprisonment for a contempt is a judgment in a criminal case, and not being punishable by imprisonment in the penitentiary, is a misdemeanor, and the Appellate Court has, by statute, jurisdiction of all writs of error from final judgments in cases of misdemeanor.

4.  Same—*Judgments Subject to Review.*—Judgments of courts of record in contempt cases are subject to review, and no valid reason can be suggested why contempts committed in the presence of the court should be distinguished from others in this respect, and judgment of fine or imprisonment exempted from the revisory jurisdiction of an appellate tribunal.

5.  Judgments—*Erroneous in Form.*—A judgment in proceedings for contempt which, after the infliction of a fine provides " which he is hereby ordered to pay immediately to the clerk of this court, and in default of which payment to be imprisoned in the jail of this county, and there held for the period of sixty days and until discharged by due process of law, and a commitment issue to carry this judgment into effect," is erroneous, because if committed in default of immediate payment the defendant would have to remain in jail sixty days, even though willing to pay his fine the next day after his commitment, and in addition would be liable for the amount of the fine.

**Proceedings for Contempt.**—Error to the Superior Court of Cook County.  The Hon. Jonas Hutchinson, Judge, presiding.  Heard in this court at the October term, 1897.  Reversed.  Opinion filed December 16, 1897.

H. T. Aspern, attorney for plaintiff in error.

Where the respondent in a common law proceeding, in answer to a rule to show cause why he should not be attached for contempt, denies the entire charge by affidavit, he is entitled to his discharge.  It is improper to hear oral

evidence to contradict such affidavit.    Welch v. People, 30 Ill. App. 399.

In all criminal contempts, if accused denies the charge against him, the court, unaided, can go no further.    The sturdy principles of the common law exempt him from submitting an issue of fact to any other tribunal than a jury of his peers with the right of challenge.    Welch v. People, Ibid. 411.

The judgment is void because an unlawful punishment is inflicted.

Section 14, Div. 14, Ill. Crim. Code, provides that when a fine is inflicted the court may order as a part of the judgment that the offender be committed to jail, there to remain until the fine and costs are fully paid or he is discharged according to law.

The sentence is a unity.    The imposition of the sixty days imprisonment is the substitute or alternative punishment for the non-payment of the fine and not an independent punishment.    That portion of the sentence inflicting sixty days imprisonment being void, the whole is void.    *Ex parte* Kelly, 65 Cal. 154;  People ex rel. Stokes v. Riseley, Sheriff, 38 Hun (N. Y.), 280;  Gurney v. Tufts, 37 Maine, 130.

CHARLES S. DENEEN, state's attorney, for defendant in error.

A contempt is an offense against the court, as an organ of public justice, and the court can rightfully punish it on summary conviction, whether the same act be punishable as a crime or misdemeanor on indictment or not.    Yates v. Lansing, 9 Johns. (N. Y.) 417;  U. S. v. Emerson, 4 Cranch (C. C.), 188.

One of the objects of proceeding by process for contempt, is to punish a contempt already committed, as a past offense, where perhaps the statutes do not cover the case, or in some cases where they do, but where the exigencies of the occasion require a more summary and prompt remedy.    Sharon v. Hill, 24 Fed. Rep. 726.

Whoever attempts to commit any offense prohibited by

law, and does any act toward it but fails, or is intercepted or prevented in its execution, where no express provision is made by law for the punishment of such attempt, shall be punished, when the offense thus attempted is a felony, by imprisonment in the penitentiary not less than one, nor more than five years; in all other cases, by fine not exceeding $300, or by confinement in the county jail not exceeding six months. R. S., Chap. 38, Sec. 273.

Mr. Presiding Justice Adams delivered the opinion of the Court.

Plaintiff in error was fined $250 by the judgment of the Circuit Court for alleged contempt of court, to reverse which judgment this writ of error was sued out.

June 25, 1897, the following affidavit was filed in the lower court:

"William Elmore Foster, being duly sworn, deposes and says: That he is the assistant attorney of the Lake Shore & Michigan Southern Railway Company; that he was present at the trial of the case of H. A. Foster, Adm'r of the estate of George Gierz, deceased, v. the said company, on the 17th day of June, A. D. 1897, before the Honorable Jonas Hutchinson; that on the afternoon of said day, during the progress of the said trial, one A. J. Kyle called affiant aside and asked him if they wished to win the case; that affiant replied that they did; that Kyle then asked affiant if he could see him at his office after court adjourned that afternoon; that affiant requested Kyle to wait a short time, and he would talk with him; that Kyle said he could not wait; that affiant thereupon said he would talk with him at once, and they both went out into the hall; that there Kyle told affiant that he knew two of the jurors in the front row; that affiant made no reply, but immediately turned and went back to the court room.

Wm. Elmore Foster.

Subscribed and sworn to before me this 18th day of June 1897.

John A. Linn, Clerk."

June 29, 1897, as appears from the record, a rule was
entered, requiring plaintiff in error to show cause within
one day why he should not be punished for contempt for
doing what is alleged in the foregoing affidavit.  The same
day plaintiff in error filed the following answer:

" People, etc., )
        v.       }
 A. J. Kyle.    )

The answer of Arthur J. Kyle to rule to answer for con-
tempt of court, entered before Hon. Jonas Hutchinson, one
of the judges of said court.   This respondent, Arthur ·J.
Kyle, saving and reserving to himself all manner of exception
to the proceedings herein, for answer unto the affidavit of
complainant herein, made by one William Elmore Foster, or
so much thereof as he is obliged to make answer thereto,
answering says, that he is not advised whether William
Elmore Foster, affiant in said affidavit of complainant, is an
assistant attorney of the Lake Shore and Michigan Southern
Railway Company, or not, or whether he was present at the
trial of the case of H. A. Foster, administrator of estate of
George Gierz v. the said company, on the 17th day of
June, A. D. 1897, before Hon. Jonas Hutchinson, or not.
And that if said acts be necessary or pertinent to the issue
herein, that strict proof may be required of the same.  This
respondent further answering under oath states that he did
not, on the afternoon of said day, during the progress of the
trial of the aforementioned case, call said William Elmore
Foster and ask him if they wished to win the case; and
denies that said Foster replied that they did; and denies that
this respondent asked said William Elmore Foster if this
respondent could see him, said Foster, at his office after
court adjourned that afternoon; but admits that William
Elmore Foster did request this respondent to wait a short
time and he would talk with this respondent; and this
respondent did state in reply to said Foster that he could
not wait; and admits that said Foster said he would talk to
this respondent at once; and that both said Foster and this
respondent did then and there go out into the hall, but that

the going out into said hall to talk was at the instigation and request of said Foster.

This respondent further answering denies that he then told said Foster he knew two of the jurors in the front row, and denies that thereupon the said Foster made no reply and immediately turned and went back to the court room.

This respondent further answering says that on the day in question he went into the court room of the Hon. Jonas Hutchinson on business connected with his employment by C. Porter Johnson, general counsel of the London Guarantee & Casualty Company, and for no other purpose.

This respondent further says that he did nothing wrong, that he intended to do nothing wrong, and that nothing he did can be construed into wrong, but that all his acts in said court room, at said time, were right and honorable and consistent with his duties.

And now having specifically and formally answered each and every allegation of the complaint on file herein, prays that the rule herein entered against the respondent be discharged, and that this respondent be dismissed and discharged from the custody of this court.

ARTHUR KYLE."

" STATE OF ILLINOIS, ⎰ ss.
County of Cook, ⎰

Arthur J. Kyle, the respondent herein, being duly sworn, deposes and says that he has read the foregoing answer by him subscribed, and that the said answer so subscribed by this affiant is true in substance and in fact.

ARTHUR J. KYLE.

Sworn to and subscribed before me this 29th day of June, 1897.

JOHN A. LINN, Clerk."

It will be observed that the date of the *jurat* is June 29th. The order to show cause was, in fact, entered June 29th, and the answer of plaintiff in error was filed the same day, but by agreement of counsel the order was entered as of June 25th, and the answer filed as of June 26th, for what reason does not appear.

Plaintiff in error, on filing his answer to the rule to show cause, moved, by his counsel, that he be discharged, on the ground that, by his sworn answer, he had purged himself of contempt; but the court overruled said motion, and proceeded to hear, and heard, the testimony of witnesses on the issues of fact made by the affidavit of Foster and the answer of plaintiff in error. Plaintiff in error rested on his answer, produced no evidence in support thereof, and the court, on the conclusion of the evidence for the people, entered an order, which, after reciting certain findings of fact, concludes as follows:

"And so the court finds that said A. J. Kyle is guilty of contempt of the Superior Court of Cook County, Illinois, in doing as herein found, and he is hereby fined for such contempt the sum of $250, which he is hereby ordered to pay immediately to the clerk of this court, and in default of which payment he be imprisoned in the jail of said county and there held for the period of sixty days and until discharged by due process of law, and a commitment issue to carry this judgment into effect."

Counsel for defendant in error contend that the matter charged in the affidavit of Foster was a direct contempt of court, and can be reviewed, if at all, only for the purpose of ascertaining whether the court had jurisdiction, and that if the court had jurisdiction, the judgment is conclusive. Blackstone, commenting on the law of contempt, says:

"The contempts that are punished are either direct, which openly insult or resist the power of the courts, or the persons of the judges who preside there, or else are consequential, which (without such gross insolence or direct opposition) plainly tend to create an universal disregard of their authority." 4 Bl. Com. 283. The same author, after enumerating certain classes of contempts, says: "Some of these contempts may arise in the face of the court, as by rude and contumatious behavior, by obstinacy, perverseness or prevarication; by breach of the peace, or any willful disturbance whatever." Ib. 285. Of the mode of procedure in cases of contempt, he says:

" If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination.    But in matters that arise at a distance, and of which the court can not have so perfect a knowledge, unless by the confession of the party or the testimony of others, if the judges upon affidavit see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him, or, in very flagrant instances of contempt, the attachment issues in the first instance, as it also does if no sufficient cause be shown to discharge; and thereupon the court confirms, and makes absolute, the original rule.    This process of attachment is merely intended to bring the party into court; and, when there, he must either stand committed, or put in bail, in order to answer upon oath to such interrogatories as shall be administered to him, for the better information of the court with respect to the circumstances of the contempt. These interrogatories are in the nature of a charge or accusation, and must by the course of the court be exhibited within the first four days; and, if any of the interrogatories is improper, the defendant may refuse to answer it, and move the court to have it struck out.    If the party can clear himself upon oath, he is discharged; but, if perjured, may be prosecuted for the perjury."    Ib. 287.

" Contempts are either direct, such as are offered to the court while sitting as such, and in its presence, or constructive, but tending by their operation to obstruct, embarrass, or prevent the due administration of justice." Stuart v. The People, 3 Scam. 395.

Church thus distinguishes between direct and constructive contempts :    " Courts have an undoubted power to punish direct and criminal contempts, and this power to punish direct or criminal contempts also necessarily includes the power to punish indirect, consequential or constructive contempts—such acts as are calculated to impede, embarrass, or obstruct the court in the administration of justice." Church on Habeas Corpus, Sec. 307.

We are of opinion that the alleged conversation between plaintiff in error and Foster, as related in the latter's affidavit, assuming for the present the truth of the affidavit, was not a direct contempt of the court. But even though it should be conceded that there was a direct contempt of the court, the law is not, as claimed by counsel for defendant in error, that the judgment is not reviewable on error. The contrary doctrine has been expressly held and practically applied by this court. In Rawson v. Rawson, 35 Ill. App. 505, 506, which was direct contempt of the court, committed in the presence of the court, the court say:

"In Stuart v. The People, 3 Scam. 395, the Supreme Court took jurisdiction to review a judgment of the Circuit Court in a contempt proceeding on a writ of error, on the ground that the court had power under the statute to review the final judgment of any inferior court of record in the State, where the judgment decides the right of property or of personal liberty. A contempt is a criminal offense, and a sentence of imprisonment for a contempt is a judgment in a criminal case. Such an offense not being punishable in the penitentiary, is a misdemeanor, and this court has, by statute, jurisdiction of all writs of error from final judgments in this district in misdemeanors. McDonald v. The People, 25 Ill. App. 350; Beattie v. The People, 33 Ill. App. 651.

It was the constant practice of the Supreme Court to review on error the judgments of the Circuit Court and of the Criminal Court of Cook County in contempt matters before the establishment of the Appellate Court, and it has been the practice of this court to review such judgments whenever the record of such a case has been presented and error assigned. It is, then, the established law of this State that judgments of courts of record in contempt are subject to review. It is true that none of the reported cases appear to have been contempts committed in the presence of the court, but if contempts are subject to review at all, no valid reason can, as we believe, be suggested why contempts committed in the presence of the court should be distinguished from others in that regard, and judgments of fine or

imprisonment therein exempted from the revisory jurisdiction of an appellate tribunal. A court is just as liable to err against the accused in a proceeding to punish him for a direct contempt, as for a constructive one; and, as the Supreme Court said in Stuart v. The People, *supra*, ' perilous, indeed, would be the condition of the citizen, if he had not the privilege in such a case to have it reviewed by another tribunal, and defective would be our jurisprudence if it afforded no means of relief.' " See also Stuart v. The People, 3 Scam. 395; Ex parte Thatcher, 2 Gilm. 167; Ex parte Smith, 117 Ill. 63.

In Ex parte Thatcher, *supra*, the court plainly intimate that the reviewing court may inquire whether the acts claimed to have been a contempt, were or were not a contempt in law, saying : " The court may not treat any and every act as a contempt, and I have no doubt that the Appellate Court may revise and reverse its judgment when it exceeds its jurisdiction, by treating that as a contempt which, in law, is no contempt and can not be. The supervision will be to ascertain that fact." Ib. 170. This statement of the court is supported by the authorities.

In People v. Kelly, 24 N. Y. 74, which was an appeal by Hackley from a judgment of the lower court, on habeas corpus, remanding him to the custody of the sheriff, the court, Davis, J., delivering the opinion say :

" As a general rule, the propriety of a commitment for contempt is not examinable in any other court than the one by which it was awarded. This is especially true where the proceeding by which it is sought to be questioned is a writ of habeas corpus, as the question on the validity of the judgment then arises collaterally, and not by the way of review. The habeas corpus act, moreover, declares that where the detention of the party seeking to be discharged by habeas corpus appears to be for any contempt, plainly and specially charged in the commitment, ordered by a court of competent jurisdiction, he shall be remanded to the custody in which he was found. But this rule is of course subject to the qualification, that the conduct charged as

constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated on it; for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so. The question whether the alleged offender really committed the act charged, will be conclusively determined by the order or judgment of the court; and so with equivocal acts, which may be culpable or innocent according to the circumstances; but where the act is necessarily innocent or justifiable, it would be preposterous to hold it a cause of imprisonment."

It has been held even on habeas corpus, where the power of the court is much more restricted than on error or appeal, if the facts stated in the warrant, or return, which are claimed to have constituted a contempt, do not, in legal contemplation, constitute a contempt, the prisoner should be discharged.    Church on Habeas Corp., Sec. 341.

In such case, the remedy in this State would be by writ of error.

Counsel for defendant in error has cited a number of cases in which the courts, on habeas corpus, refused to review the judgments of courts of record having jurisdiction in the premises.    Such cases have no application for a two-fold reason.    The proceeding by habeas corpus is collateral to the judgment imposing the imprisonment, and the court is restricted to certain inquiries.    The judgment can not, in such proceeding, be impeached for mere error or irregularity.    The distinction between the power of the court on habeas corpus and on error to review the judgment, is recognized in Ex parte Smith, *supra*, the court saying:

"We regard the petition in this case as a mere attempt to review and set aside a judgment at law for an alleged error in the proceeding, where the court clearly had jurisdiction both of the person and subject-matter of the suit.    This can not be done.    The petition shows that the petitioner was regularly brought before the grand jury as a witness, that he refused to answer certain questions propounded to

him, and that the court thereupon imposed a fine upon him. Whether the court was authorized, under the circumstances, to impose the fine, was a matter which the law authorized and empowered the court to determine, just as in any other case of alleged contempt.    While, for the purposes of the argument, it may be conceded that the court erred in reaching the conclusion it did, nevertheless its right and duty to pass upon the question was clear, beyond all question.    If the judgment was erroneous, as is claimed, the remedy was the same as in the case of any other erroneous judgment where the right of appeal or writ of error is given.    We regard the order directing the defendant to stand committed till the fine and costs were paid, in the nature of final process—a mere means enforcing the payment of the judgment—which would have been suspended by any order staying the judgment itself.    If, as claimed, the judgment is erroneous, a writ of error was the appropriate remedy, and upon that hypothesis we must assume the reviewing tribunal would, if asked, have made the writ a supersedeas, which would have suspended the order of commitment till the case could be disposed of on the merits. The following authorities fully sustain the view here taken : The People ex rel. v. Foster, 104 Ill. 156; The People ex rel. v. Pirfenbrink, 96 Id. 68; The People ex rel. v. Whitson, 74 Id. 20; Hammond v. The People, 32 Id. 446."

Plaintiff in error purged himself from contempt by his answer, if contempt there was (in reference to which we express no opinion), and should have been discharged.    4 Bl. Com. 287; Welch v. The People, 30 Ill. App. 399; Buck v. Buck, 60 Ill. 105; Storey v. The People, 79 Ill. 45.

On the hypothesis that any judgment could be rendered against plaintiff in error, the judgment entered is erroneous. The judgment is — "and he is hereby fined for such contempt the sum of two hundred and fifty dollars, which he is hereby ordered to pay immediately to the clerk of this court, and in default of which payment, he be imprisoned in the jail of this county and there held for the period of sixty days, and until discharged by due process of law, and a commitment issue to carry this judgment into effect."

The judgment in such case, after the words "two.hundred and fifty dollars," should be, that the defendant be committed to jail, there to remain until the fine and costs are fully paid, or he be discharged according to law, or words of like import. On such a judgment the prisoner would be entitled to be released from imprisonment on payment of the fine at any time after commitment, but on the judgment rendered, if committed on default of immediate payment to the clerk, he would have to remain in jail sixty days, even though willing to pay his fine the next day after commitment, and, in addition, would be liable for the amount of the fine.

The judgment will be reversed.