## The People of the State of Illinois, Defendant in Error, v. Edward S. Gard, Plaintiff in Error.

### Gen. No. 18,100.

1. APPEALS AND ERRORS—*defective abstract may work affirmance.* A judgment may be affirmed where the abstract of the record is so informal, defective and unintelligible as to make it necessary to have recourse to the record.

2. CRIMINAL LAW—*when record cannot be impeached.* Where an *amicus curiae* represents the People in a contempt proceeding in a criminal court, it cannot be contended that at the time the court entertained jurisdiction it was not legally or properly constituted because the state's attorney was not then present, where the *placita* in the record recites the presence of the state's attorney.

3. INDICTMENT AND INFORMATION—*when verification is necessary.* An information or complaint presented by a person other than the state's attorney or attorney general must be verified, and an affidavit accompanying such information or complaint cannot be treated as a part thereof.

4. CONTEMPT—*when precedent order is not necessary.* A court of justice has the inherent power, where a contempt is direct and committed in the presence of the court, to punish the offender without a precedent order to show cause or the filing of interrogatories or a formal statement of the charge.

5. CONTEMPT—*when information need not be verified.* Where a police officer committed a direct contempt in the presence of the court by making a false and evasive return to a writ of habeas corpus, it is immaterial that an information for contempt presented by an *amicus curiae* was not verified, since it is unnecessary to file an information.

6. CONTEMPT—*when negative shake of the head constitutes contempt.* A police officer shaking his head in the negative in response to a question on the hearing of a writ of habeas corpus whether there are any other charges against the prisoner, when in fact he has sworn out two warrants, commits a direct contempt of court, and it is immaterial that he makes the false return to the writ by a shake of his head instead of audibly speaking the word "no."

7. EVIDENCE—*judicial notice taken that shaking head in negative manner means "no."* It being a matter of common knowledge that persons frequently indicate their affirmance or denial or their assent or dissent by a nod or shake of the head, judicial notice will be taken, in a contempt proceeding against a police officer for

making a false return to a writ of habeas corpus, that in shaking his head in a negative manner is response to a question he answered the question "no."

8. CONTEMPT—*punishment not excessive.* Where a police officer commits a direct contempt in the presence of a court by making a false and evasive return to a writ of habeas corpus, a sentence of imprisonment in jail for sixty days is not excessive.

Error to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed October 16, 1912. Rehearing denied December 4, 1912.

MICHAEL F. SULLIVAN, for plaintiff in error; DANIEL DONAHOE and JAMES HARTNETT, of counsel.

JOHN E. W. WAYMAN, for defendant in error; LE ROY FAIRBANK, Z. HOFFHEIMER and GEORGE W. MILLER, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

This writ of error is prosecuted by Edward S. Gard to review the record of a proceeding in the Criminal Court, wherein said Gard was adjudged guilty of contempt of court and sentenced to imprisonment in the common jail of Cook county for a period of 60 days.

The abstract of the record is so informal, deficient and unintelligible as to make it necessary to have recourse to the record, and the judgment might well be affirmed because of the insufficiency of the abstract. We have, however, elected to examine the record itself and review the same upon a consideration of the oral argument of one of counsel for plaintiff in error. The record, abstract and printed argument of counsel for plaintiff in error are needlessly encumbered with what purport to be copies of a certain petition and motion on behalf of plaintiff in error filed in an original proceeding for mandamus against the sheriff of Cook county, lately pending in the Supreme Court, wherein, by the judgment of that court, the respondent was di-

rected to apprehend plaintiff in error and deliver him to the jailor of Cook county. People v. Zimmer, 252 Ill. 9. The matters set up in said petition and motion and any reference to said petition and motion are obviously irrelevant here.

A few days prior to November 21, 1910, one William Schubert was arrested by a police officer of the city of Chicago and confined in a police station on suspicion that he had robbed one F. L. Bates. Schubert was detained in the police station without any formal complaint and without a warrant. On the day last named Schubert filed in the Cirminal Court a petition for a writ of habeas corpus, wherein he charged that he was unlawfully detained by the superintendent of police and prayed that writ be issued directed to said superintendent of police commanding him to bring the petitioner before the court forthwith. The writ was ordered as prayed, and issued on the same day, and in response thereto plaintiff in error, a police officer of the city of Chicago produced Schubert in court. In his oral return then made to the court, plaintiff in error stated that Schubert was held in custody on suspicion of having robbed said Bates, and that he, plaintiff in error, was then unable to produce Bates or to secure the attendance of other witnesses for the purpose of identifying Schubert. The court thereupon continued the further hearing upon the petition until November 23rd. On November 22nd, upon two complaints verified by plaintiff in error and filed in the Municipal Court, charging Schubert with vagrancy and adultery, warrants were issued out of said court for the arrest of Schubert and placed in the hands of plaintiff in error, or of Loftus, also a police officer, to serve. On November 23rd, when the hearing in the habeas corpus proceedings was resumed, plaintiff in error again produced Schubert in court and Bates, who was then present, was unable to identify Schubert as the person who had robbed him. At this stage in the proceedings the facts constituting the contempt charged are alleged to have

taken place in the presence of the court, which facts are recited in the order of commitment as being within the personal knowledge of the court, as follows:

"That this court thereupon asked said Gard if he had any other charges against said Schubert, to which question said Gard, then standing within a few feet of this court, responded by shaking his head in the negative, meaning and intending to convey to the court by said shake of his head that he, said Gard, had no other or further charges, process or warrants against said Schubert of any kind upon or under which said Schubert could or should be held in custody and that said court so understood said action and acted in accordance therewith."

Immediately following this incident, Schubert was, by the court, discharged from custody, and, accompanied by his counsel, left the court room and returned to the county jail. At the same time plaintiff in error, accompanied by an assistant state's attorney, also went to the county jail where plaintiff in error intended to arrest Schubert upon the two warrants then in his possession issued out of the Municipal Court upon his complaint, and was about to execute such intention when he was intercepted by counsel for Schubert and requested to go before the court and explain his conduct. Plaintiff in error, accompanied by R. E. Cantwell, counsel for Schubert, then went before the court and what then occurred is recited by the court in the order of commitment, as follows:

"That about one-half hour thereafter (after the parties left the court room following the discharge of Schubert) said Gard and said Cantwell again appeared before this court in open court, when and where complaint against the conduct of said Gard was made by said Cantwell on behalf of said Schubert, and in response to interrogatories by counsel for said Schubert, and by this court, respondent Gard then stated that he had taken out in the Municipal Court of Chicago on the 22nd day of November, A. D. 1910, two warrants for the arrest of said Schubert, one charging the said

Schubert with the crime of adultery and the other with the crime of vagrancy, and that he had such warrants in his possession at the time of the hearing of said *habeas corpus* proceedings which had taken place before this court on that date, November 23, 1910, and at the conclusion of which said Schubert had been ordered discharged by this court, and respondent Gard then and there stated further that he took out said warrants for the purpose of arresting said Schubert when said Schubert was discharged in the said *habeas corpus* proceedings, and that after the discharge of said Schubert had been ordered by this court, he, Gard, went to the jail of said Cook county to again arrest said Schubert when he should be discharged under the order which had theretofore been entered by this court, and that he would have done so had he not been prevented from so doing by counsel for said Schubert.''

On November 30th following, the court upon its own motion appointed George W. Miller, an attorney of the court, not the State's Attorney or Attorney General, as *amicus curiae* and to represent the People of the State of Illinois in a proceeding against plaintiff in error for contempt of court, and on the same day Mr. Miller, acting in that capacity, prepared, signed and filed in the court what purports to be an information, charging plaintiff in error with contempt of court in the respect heretofore indicated. The court, then also, entered a rule on plaintiff in error to show cause why he should not be held in contempt of court by December 2nd following. This information was not verified, but there were submitted and filed therewith the affidavits of three persons setting forth with more or less detail the facts alleged in the information upon which the charge of contempt of court against plaintiff in error was predicated. A series of interrogatories touching the matters alleged in the information were then prepared by Mr. Miller, which interrogatories plaintiff in error was required by the court to answer. Plaintiff in error then interposed a demurrer to said information which demurrer was overruled by

the court.   Thereafter, by leave of court, additional interrogatories were propounded to plaintiff in error which interrogatories he was ruled by the court to answer, and the hearing in the proceeding was continued from time to time until February 2, 1911, when the formal order or judgment adjudging plaintiff in error guilty of contempt was entered by the court.   Said order or judgment, after reciting the main facts heretofore stated as being found by the court, including the recitals above quoted, concludes as follows:

"And the court doth find further that said respondent Gard at the time of said hearing of said *habeas corpus* proceedings before this court on the 23rd day of November, A. D. 1910, was guilty of making an insufficient, evasive and false return to said writ of *habeas corpus,* and was guilty of a direct contempt of the Criminal Court of Cook County, Illinois, from which said answers of said respondent Gard are insufficient to purge him, all against the peace and dignity of the People of the State of Illinois, as in said information charged.

"Wherefore, it is ordered and adjudged by the court that the rule to show cause heretofore entered herein against said respondent, Edward S. Gard, be and the same is hereby made absolute and that the respondent, Edward S. Gard, be and he is hereby adjudged guilty of the contempt of the Criminal Court of Cook county, Illinois, charged against him in and by said information and hereinbefore found by the court, and that said respondent, Edward S. Gard, be and he is hereby committed to the common jail of Cook county, Illinois, there to remain charged with the contempt aforesaid for a period of sixty days, or until otherwise sooner discharged in due course of law," etc.

The point is made that at the time the Criminal Court entertained jurisdiction of the contempt proceedings against plaintiff in error it was not legally or properly constituted, because the State's Attorney was not then present.   The *placita* in the record recites the presence of the State's Attorney, and as the record imports verity it cannot be impeached in that re-

gard by what appears therein with reference to the appointment by the court of Mr. Miller as *amicus curiae* and to represent the People in the proceedings then had.

An information or complaint presented by a person other than the State's Attorney or Attorney General is required to be verified, and an affidavit or affidavits accompanying such information or complaint cannot be treated as a part thereof. Long v. People, 135 Ill. 435; Samuel v. People, 164 Ill. 379. The information or complaint in this case was not presented to the court by the State's Attorney or Attorney General and was not verified, and was, therefore, informal, but in the view we take of the case such information or complaint, or any formal information or complaint, was wholly unnecessary to the jurisdiction of the court of the person of plaintiff in error, and of the subject matter of the contempt involved. Every essential element constituting the contempt of which plaintiff in error was adjudged guilty transpired in the actual presence and within the personal observation and knowledge of the court, or was admitted by plaintiff in error in open court, and the order of commitment entered by the court specifically so recites. A court of justice has the inherent power where the contempt is direct and committed in the presence of the court to punish the offender without a precedent order to show cause or the filing of interrogatories or a formal statement of the charge. Rawson v. Rawson, 35 Ill. App. 505; Kyle v. People, 72 Ill. App. 171; Ferriman v. People, 128 Ill. App. 230. Conduct, in the presence of the court, which is calculated to impede, embarrass or obstruct the court in the administration of justice, or which tends to bring the authority and administration of the law into disrespect or disregard, constitutes a direct contempt of court and is punishable as such. Dahnke v. People, 168 Ill. 102.

It is conclusively established by the finding of the court, incorporated in the order of commitment, that in

its presence and within its personal knowledge upon the occasion in question, plaintiff in error was asked by the court if he, plaintiff in error, had any other charges against Schubert, and that in response to such question plaintiff in error shook his head in the negative; that thereupon the court entered an order discharging Schubert from custody; that at the time the court asked plaintiff in error said question and plaintiff in error so responded thereto, he had, and then knew he so had, in his possession a warrant for the arrest of Schubert upon another and different charge.

It cannot be and is not seriously urged that if, in response to the question asked him by the court, plaintiff in error had audibly spoken the word "no," or some equivalent word or words, or had replied to the question in the negative in writing, he would not be guilty of a direct contempt of court, but it is insisted that the court improperly and without justification construed the act of plaintiff in error in shaking his head as any answer in the negative, or its equivalent. It is a matter of common knowledge that persons frequently indicate their affirmance or denial or their assent or dissent by a nod or shake of the head and this practice is so common and its meaning so well understood that courts may take judicial notice of such practice and apply to it the commonly accepted interpretation. We are unable to perceive any merit in this insistence of plaintiff in error. Justice would be blind indeed if it was unable to discern the significance of a means of communication so universally indulged in and acted upon.

It is finally urged that the punishment imposed by the court was grossly excessive. The punishment to be inflicted in cases of contempt is a matter within the sound judicial discretion of the court imposing the punishment, and courts of appellate jurisdiction are averse to interfering with the exercise of such discretion, unless it is made to appear that such discretion has been arbitrarily and oppressively exercised.

Hake v. People, 230 Ill. 174; People v. Kizer, 151 Ill. App. 6. We cannot say that the Criminal Court abused the discretion vested in it in this case.

There is no error in the record which requires a reversal of the judgment and the judgment will be affirmed.

*Judgment affirmed.*