## The People of the State of Illinois, Defendant in Error, v. Edward M. Seymour, Plaintiff in Error.

### Gen. No. 20,043.

1. CONTEMPT, § 2*—*nature of power to punish.* All courts of record independent of statutory provisions have an inherent power to punish contempts committed *in facie curiæ.*

2. CONTEMPT, § 2*—*power of court to punish for.* The power of a court to punish for contempt necessarily includes all acts calculated to impede, embarrass or obstruct the court in administration of justice, the primary question being in such cases of alleged contempt whether there has or has not been an interference with the due administration of justice.

3. CONTEMPT, § 51*—*nature of proceedings.* Proceedings for contempt of court are of two classes: Those which are criminal in their nature, sometimes called common-law contempts, and those which are intended as purely civil remedies, which ordinarily arise out of the alleged violation of some order entered in the course of a chancery proceeding.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

4. CONTEMPT, § 61*—*effect of trial on answer.* Where in a case of common-law contempt the answers of defendant prove false the remedy is by indictment for perjury, as such defendant must be tried upon his answer, and found guilty or purged.

5. CONTEMPT, § 68*—*inadmissibility of evidence extrinsic to answer.* In cases of common-law jurisdiction for contempt the defendant is tried on his answer made to interrogatories filed and no other evidence is heard, so that if the party purges himself of the contempt by his answer he will be discharged.

6. CONTEMPT, § 68*—*admissibility of affidavits.* In a proceeding for contempt for violation of orders in chancery the court will hear affidavits *pro* and *con*, and may also avail itself of other legal evidence that will aid the court to determine the question according to right and justice.

7. CONTEMPT, § 1*—*direct contempt.* When an act constituting contempt of court is committed in the actual presence of the court while sitting as such, or so near to the court as to interrupt its proceedings, it is denominated a direct contempt and is punishable in a summary way by fine or imprisonment or both, without any preliminary affidavit, process or interrogatories, whether it be a civil contempt for refusing in open court to abide by an order of a court of chancery or a common-law contempt, criminal in its nature, since the facts constituting the alleged contempt are within the personal knowledge of the court.

8. CONTEMPT, § 64*—*right of trial by jury.* In a proceeding for a contempt of court there is no constitutional right of trial by jury involved.

9. CONTEMPT, § 51*—*nature of proceedings.* While proceedings for common-law contempt are in their nature criminal, they are not criminal prosecutions within the meaning of the Bill of Rights, providing that in all criminal prosecutions the accused shall have a right to a jury trial, a copy of the indictment or information, to meet the witnesses face to face and to have process to compel the attendance of witnesses in his behalf, such cases not being governed by the ordinary rules of criminal procedure.

10. CONTEMPT, § 33*—*interference with property taken under writ of restitution.* In a proceeding for common-law contempt, where it appeared by defendant's answers that he advised a person to regain possession by force if necessary of premises from which she had been ousted less than twenty-four hours before by a writ of restitution that had not yet been returned by the bailiff, and his answers did not deny any of the material facts nor did not present any other facts or circumstances that were sufficient to explain or justify his wilful and unlawful interference with the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

judgment and process of the court, it constituted, in effect, a plea of guilty to the charge of contempt in spite of his disavowal of any intention to commit a contempt, the disavowal being inconsistent with his acts and contradicted by them so that the court properly found him guilty upon his answer.

11.  WITNESSES, § 249*—*privilege as to incrimination personal.* The right of a defendant to refuse to answer upon the ground that it may tend to criminate him is a personal privilege which must be specifically claimed or it will be considered as waived.

12.  CONTEMPT, § 61*—*necessity of answering.* The constitutional provision "that no person shall be compelled in any criminal case to give evidence against himself" has no application to a contempt proceedings, even though it be of that class which would be considered as criminal in its nature.

13.  CONTEMPT, 78*—*proper order as to punishment.* In a proceeding for a common-law contempt punishment is *held* not excessive, for the reason that the judgment provided that in case of default in payment of the fine he should stand committed until the fine should be paid "or until said respondent shall have been discharged according to law."

Error to the Municipal Court of Chicago; the Hon. FRANK H. GRAHAM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed February 4, 1915. Rehearing denied February 16, 1915.

**Statement by the Court.** By this writ of error it is sought to reverse a judgment of the Municipal Court imposing a fine of fifty dollars upon the plaintiff in error, hereinafter called the respondent, for contempt of court. The writ of error was sued out of the Supreme Court, but upon motion the cause was transferred to this court in October, 1913.

The following facts appear from the affidavit of the relator and the sworn answer of the respondent: In February, 1913, one John Konopa was the owner of certain premises in Chicago, occupied by Mrs. Anna Przybylski. The Eagle Brewing Company, claiming to be entitled to the possession of said premises, brought a forcible detainer suit against Mrs. Przybylski in the Municipal Court, and on February 13, 1913, a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

judgment for possession was entered against her by default. She made a motion the next day to vacate the judgment, supported by affidavits, which motion was heard and overruled. On February 20, 1913, she entered into a contract with Konopa for the purchase of the premises in question for the sum of six thousand dollars, payable fifty dollars as earnest money, thirty-nine hundred and fifty dollars in forty days, and the remainder by assuming the payment of an incumbrance of two thousand dollars. This contract was in the usual form of contracts for the purchase and sale of real estate, and contained the usual provisions regarding examination of the abstract of title, forfeiture for nonperformance, etc. There was no provision in it authorizing the purchaser to take possession of the premises prior to the consummation of the sale, but the sale was made "subject to existing leases expiring monthly, the purchaser to be entitled to the rents, if any, from February 20, 1913." Mrs. Przybylski was in possession at the time this contract was made. Five days later a writ of restitution was issued upon the judgment in favor of the Brewing Company, and delivered to a deputy bailiff named Remus to be executed. The deputy removed Mrs. Przybylski and her effects from the premises and locked the doors, but did not return the writ to the clerk's office, nor make any return upon the same. The record does not show when, if ever, such a return was made. The day after she was thus dispossessed, Mrs. Przybylski consulted the respondent, who is an attorney at law, but who had not represented her in the forcible detainer proceedings. After hearing her story he went to the office of the clerk of the Municipal Court and made inquiries regarding the status of the forcible detainer proceedings. He was informed by a clerk that a writ of restitution had been issued and executed and that the keys to the premises in question had been delivered to the attorney for the Brewing Company, but that Remus, the

deputy bailiff, still had the writ in his possession and had made no return of the same. The respondent inquired as to the names of the persons who had assisted Remus in dispossessing Mrs. Przybylski, but was referred to Remus for information upon that point. Remus was not about, however, so the respondent and Mrs. Przybylski sought the judge who had entered the judgment. They told him of the eviction, and of her purchase of the property after the judgment was entered. The judge said that nothing could be done except upon notice to opposing counsel. The respondent admitted in his answer that he then told Mrs. Przybylski to go back to the premises, and if no custodian was in charge of the same, "to pull the lock off the door, put her beds and the like inside, and to stay there over night, or until the further order of the court," and that he sent with her a young man from his office to see that these directions were carried out, instructing him, however, not to create any disturbance, but merely to make sure that no officer of the court was in actual possession. Pursuant to his advice and instructions, Mrs. Przybylski took possession of the premises. The next day she was again dispossessed by the bailiff, who then placed a custodian in charge of the premises. She made another attempt to re-enter by force, but desisted when threatened by the custodian.

On May 3, 1913, a document called an information was filed in the Municipal Court, signed and sworn to by the attorney for the bailiff of that court. This information states that on February 25, 1913, "a writ in words and figures as shown by a copy thereof attached and marked Exhibit A and made a part of this information," was issued out of said court "in a cause wherein this court had jurisdiction of the parties thereto and the subject-matter thereof"; that said writ was received by the bailiff and was delivered to a deputy named Remus, for service; that on February 28, 1913, Remus "dispossessed the defendant therein

named from the premises described in said writ, but made no return on said writ"; that thereafter the respondent, Seymour, became the attorney for the defendant in said writ, and "with full notice and knowledge of the existence of said writ and of the action of the deputy bailiff thereunder, and without leave of court, advised and directed the said defendant in said writ by force to repossess herself of said premises in said writ described, and to withhold possession from the plaintiff in said writ and the bailiff of this court"; that acting upon his advice, "the defendant in said writ repossessed herself of said premises," and held the same until she was "redispossessed" by the bailiff; that thereafter, acting upon respondent's advice, she broke open the rear door of the premises and was about to break another, when she was threatened with bodily harm by the custodian, and left the premises; that during all these transactions, the said writ was in the possession and under the control of the deputy bailiff "unreturned"; and that this conduct of Seymour "tended to belittle this court and obstruct, embarrass and impair the administration of justice," and was an unlawful interference with the duty of an officer of the court.

The respondent filed a motion to quash the information because of its alleged uncertainty and insufficiency. Upon the hearing of this motion it appeared that the writ referred to in the information as "Exhibit A" had not been attached as an exhibit, but upon leave granted, a copy of the writ was then attached, and thereupon the motion to quash was overruled and the respondent was ruled to answer within ten days the information as thus amended. He filed an answer under oath, setting up, in substance, the facts hereinabove stated and disclaiming any intention on his part of committing a contempt of court, or of obstructing the due administration of justice. Later, interrogatories

were also filed to which he filed answers setting up the same facts, in substance, as in his answer to the information. After an examination of the information and the sworn answers, and after arguments of counsel, the court found that the answers filed "did not constitute a full and complete defense to the charge of contempt made in the information filed," and that respondent was guilty of contempt.

SCOTT O. CAVETTE and E. M. SEYMOUR, *pro se*, for appellant.

MACLAY HOYNE, for defendant in error; JOHN STELK, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

The briefs of the respondent were evidently prepared for the Supreme Court, and were filed here without revision after the case was transferred. In consequence, we have been obliged to sift from the briefs and arguments such contentions as seem to be properly before this court. Briefly stated, these contentions are that the Municipal Court erred: (1) In denying the respondent's motion to quash the information; (2) in compelling him to give evidence against himself; (3) in denying him a jury trial; (4) in refusing to discharge him upon his answer. Underlying each and all of these alleged errors is the theory that the proceeding in the Municipal Court was a criminal prosecution, that all the technical formalities incident to the trial of criminal cases must be strictly observed in a contempt case, and that the failure of the Municipal Court to accept and act upon that theory in this case violated the provisions of the Constitution of the United States and of the State of Illinois relating to due process of law and to the right of trial by jury.

The proposition that "all courts of record have an inherent power to punish contempts committed *in facie curiæ*" (Rapalje on Contempts, sec. 1) is too firmly established in this State to admit of argument. In the early case of *Clark v. People,* Breese, 340, it was said that such a power "is an incident to all courts of justice independent of statutory provisions." In *Dahnke v. People,* 168 Ill. 102, it was said: "In *Stuart v. People,* 3 Scam. 395, we held, that the power was inherent in every court of justice to defend itself when attacked, just as much as the individual man has a right to defend himself for his own preservation; and we also there held, that in the power to punish for contempt are necessarily 'included all acts calculated to impede, embarrass or obstruct the court in the administration of justice. Such acts will be considered as done in the presence of the court.' * * * It has been said, that the power of the court in the matter of contempt cannot be defined within any limits, and that the primary question in all cases of alleged contempt is, 'whether there has or has not been an interference or an attempt to interfere with the due administration of justice.' "

Proceedings for contempt of court are of two classes: Those which are criminal in their nature, which are sometimes called common-law contempts, and those which are intended as purely civil remedies, which ordinarily arise out of the alleged violation of some order entered in the course of a chancery proceeding. In *Hake v. People,* 230 Ill. 174, it was said (p. 185): "There is a distinction to be noted, in several respects, between practice in contempt proceedings in a court of chancery and proceedings to punish contempts in a court at law. Where the proceeding is in a court of equity, the contempt is punished as an incident to the enforcement of orders and decrees made in furtherance of the remedy sought. In cases of common-law cognizance the contempt usually consists in some act in disregard of the power and dignity of the court, and which has a tendency to interrupt or disturb the due

administration of justice. In cases of common-law jurisdiction for contempt the defendant is tried upon his answer made to interrogatories filed. No other evidence is heard.. If the answers prove false the remedy is by indictment for perjury, but if the party purges himself of the contempt by his answer he will be discharged. In a proceeding for contempt for violation of orders in chancery the court will hear affidavits *pro* and *con,* and may also avail itself of any other legal evidence that will aid the court to determine the question according to right and justice.'' Many Illinois cases are cited in which this distinction was recognized, and the reason for the distinction is shown by a quotation from the opinion in the case of *O'Brien v. People,* 216 Ill. 354, wherein it was said: ''When the contempt consists of something done or omitted in the presence of the court tending to impede or interrupt its proceedings or lessen its dignity, or out of its presence in disregard or abuse of its process, the proceeding is punitive or criminal, and the penalty is inflicted by way of punishment for the wrongful act and to vindicate the authority and dignity of the people, as represented by their judicial tribunals. In such cases the application for attachment may be made in the original cause, yet the contempt proceeding will be a distinct case criminal in its nature. Cases of this kind are clearly distinguished from cases where the parties to a civil suit, having the right to demand that the other party do some act for their benefit, obtain an order from a proper court commanding the act to be done, and upon refusal the court, by way of executing its orders, proceeds as for contempt, for the purpose of advancing the civil remedy of the other party to the suit. In this class of cases, while the authority of the court will be incidentally vindicated, its power has been called into exercise for the benefit of a private litigant and not in the public interest, merely.''

There is a further distinction in the procedure in contempt cases between what are known as direct

contempts and those which are called constructive contempts. When the act constituting a contempt is committed in the actual presence of the court while sitting as such, ''or so near to the court as to interrupt its proceedings,'' it is denominated a direct contempt (*Stuart v. People, supra; Dahnke v. People, supra*). Such contempts are punishable in a summary way by fine or imprisonment or both, without any preliminary affidavit, process or interrogatories (Rapalje on Contempts, sec. 93), whether they be civil contempts for refusing in open court to abide by an order of a court of chancery, as in the case of *Tolman v. Jones,* 114 Ill. 147, or common-law contempts, criminal in their nature, such as that involved in the case of *People v. Gard,* 259 Ill. 238, for the reason that in all such cases the facts constituting the alleged contempt are within the personal knowledge of the court, and the respondent is usually present in the court room at the time. Acts which are committed not in the actual presence of the court nor so near to the court as to interrupt its proceedings, but which nevertheless tend to obstruct, embarrass, impede or prevent the due administration of justice, are denominated constructive contempts (*Stuart v. People, supra; People v. Wilson,* 64 Ill. 195), because they are only constructively *in facie curiæ.* In such cases, the facts are ordinarily not within the personal knowledge of the court and the respondent is not ordinarily in court, and therefore the procedure for the punishment of such contempts is necessarily of a different and more formal character. Usually—but not necessarily, as will be hereafter shown—the facts constituting a constructive contempt, whether it be of a civil or criminal nature, are brought to the attention of the court by affidavit, and a rule is then entered against the alleged offender to show cause why he should not be attached and punished for contempt. Rapalje on Contempts, secs. 93, 103. From this point on, the practice in cases of constructive contempt of a

criminal nature is essentially different from that which obtains in cases of constructive contempt for failing to comply with an order entered in a chancery case. If the offense charged is a common-law or criminal contempt as above defined, the respondent may file a sworn answer to the rule, or he may insist that interrogatories be filed for him to answer under oath, and if his sworn answer in either case is sufficient to acquit him of the charge of contempt, he must be forthwith discharged. *Hake v. People, supra; Oster v. People,* 192 Ill. 473; *Welch v. People,* 30 Ill. App. 399; *Stull v. People,* 173 Ill. App. 512. In such cases, the hearing of evidence, or counter-affidavits, in contradiction of the respondents' sworn answer, is "without warrant of law" (*Welch v. People, supra; Stull v. People, supra*). If, on the other hand, the alleged contempt be of the nature of a civil contempt, as above defined, the answer of the respondent is not conclusive, but the court may hear affidavits, or any proper testimony, to enable it to determine the truth of the matter according to justice and equity (*Hake v. People, supra*).

In *Oster v. People, supra,* it was held that a contempt proceeding brought in the name and on behalf of the people for the purpose of punishing a receiver for his alleged participation in the wrongful removal and secretion of certain goods in his custody, with the intention of depriving the court of the control thereof, was criminal or *quasi* criminal in its nature, and that therefore the sworn answer of the receiver, in which he explicitly denied any participation in the alleged wrongful acts, was conclusive, so far as that proceeding was concerned, and entitled the respondent to a discharge. In that case, the contempt proceeding was commenced by entering an order for an attachment against the receiver, in the course of a hearing upon a petition in the chancery suit, without the filing of any preliminary affidavit or information. As to this mode of proceeding, the Court said, in substance, that while, as a

general rule, an attachment for a contempt of court, committed out of the presence of the court, should be based upon an affidavit as to the truth of the facts constituting the alleged contempt, still the filing or presentation of such an affidavit is not essential to the jurisdiction of the court where, as in that case the facts constituting the alleged contempt had been otherwise brought to the attention of the court, and the respondent was otherwise fully advised—in that case, by the order for the attachment—of what he would be called upon to meet and answer.

It is almost universally held that a proceeding of this nature does not violate any constitutional right of trial by jury (Rapalje on Contempts, sec. 112), nor does it contravene the constitutional provision that no person shall be deprived of life, liberty or property without due process of law. "In matters of contempt a jury is not required by due process of law" (*People v. Kipley,* 171 Ill. 44, 70; see also, *O'Brien v. People, supra,* at p. 370). In *Storey v. People,* 79 Ill. 45, 52, it was said: "The common law mode of proceeding in cases of contempt, presents no question of fact to be tried by a jury. *The defendant determines, by his own answer, under oath whether he is guilty of that which is charged against him as a contempt of court,* and if he fail thereby to purge himself, the court may, at once, impose the punishment." The opinion of the late Judge Gary, in the case of *Welch v. People, supra,* is to the same effect.

From an examination of these decisions, as well as others in this State on the general subject of contempts, it will be seen that our courts have generally been careful to say that such proceedings as the one here in question are *"in the nature"* of criminal proceedings; that is, that for certain purposes and to a certain limited extent, they will be considered as criminal cases. The fact that such proceedings are thus

characterized implies that they are not considered as criminal cases for all purposes. So far as we are advised, it has never been held in this State that they are criminal prosecutions within the meaning of the ninth section of the Bill of Rights, which provides that "in all criminal prosecutions" the accused shall have the right to a jury trial, a copy of the indictment or information, "to meet the witnesses face to face" and to have process to compel the attendance of witnesses in his behalf. When such proceedings are prosecuted in the name of the People, for the purpose of inflicting punishment for wilful contumacy, they are said to be *quasi* criminal in character because of the object sought to be accomplished, but they are not criminal prosecutions in the ordinary sense, nor are they governed by the ordinary rules of criminal procedure. It is necessary that the respondent be apprised with reasonable certainty, by affidavit, information or rule to show cause, of the nature of the charge against him and of the facts upon which the alleged contempt is predicated, and it is also requisite that he shall have a reasonable opportunity to answer the charge by a written answer under oath. If, by his sworn answer, he specifically denies the facts upon which the charge is founded, or if he sets up other facts which, if true, are sufficient to acquit him of the charge, then he must be discharged, for the reason that his answer in such case presents an issue of fact which cannot be tried by the court in a proceeding of this character. Whether his answer, if true, is sufficient to acquit him of the charge is not a question of fact, but a question of law. If his answer is adjudged by the court to be insufficient to acquit him, or if his answer admits the material facts charged to be true, then there is no issue of fact to be tried, and in such case, if such facts constitute a wilful contempt of court, the order imposing punishment for such contempt is analogous to a sentence pronounced upon a plea of guilty in a criminal case. *Welch v.*

*People, supra.* There being nothing in such case for a jury to try, no constitutional right of trial by jury is in any manner involved.

The procedure followed by the Municipal Court in this case was in accord with the practice above stated, and this being true, the constitutional requirement of due process of law was duly observed. *Flannery v. People,* 225 Ill. 62-72. The respondent was fully apprised by the information, as amended, of the nature of the charge against him and of the facts he was called upon to explain, deny or justify. The facts stated in the amended information, if true, constituted a wilful contempt of court on the part of respondent. He was given every opportunity to purge himself of the alleged contempt, but failed to do so. By his answers to the rule and to the interrogatories, he admitted, in effect, that with full knowledge of the facts alleged in the information he advised Mrs. Przybylski to regain possession, by force if necessary, of premises from which she had been ousted less than twenty-four hours before, under a writ of restitution that had not yet been returned by the bailiff. His answers did not deny any of the material facts, nor did they present any other facts or circumstances that were sufficient to explain or justify this wilful and unlawful interference with the judgment and process of the court. Therefore, in effect, he pleaded guilty to the charge of contempt. His disavowal of any intention to commit a contempt is inconsistent with his acts and is contradicted by them. Therefore the court properly found him guilty upon his own answer. The alleged constitutional questions now raised by him were mentioned for the first time in the Municipal Court after the court had pronounced its finding, in a written motion in arrest of judgment, and then only in the most general terms. He did not at any time claim any right to refuse to answer upon the ground that his answer might tend to criminate him. The right to refuse to answer

upon that ground is a personal privilege, and must be specifically claimed or it will be considered as waived. *Bolen v. People,* 184 Ill. 338; *Kanter v. Clerk of Circuit Court,* 108 Ill. App. 287.    Moreover, as to this point, we agree with the Appellate Court of the Third District in holding that the constitutional provision that "no person shall be compelled in any criminal case to give evidence against himself," has no application to a contempt proceeding, even though it be of that class which is considered as criminal in its nature (*O'Neil v. People,* 113 Ill. App. 195).    Nor does the fact that the conduct of the respondent may, perhaps, have amounted to a criminal offense,—as to which we express no opinion,—and may have been punishable as such, relieve the respondent from liability for contempt of court.    *Flannery v. People, supra; O'Neil v. People, supra.*    The point made that the punishment is excessive because no limit is fixed for imprisonment in case the fine is not paid is untenable, for the reason that the judgment provides that in case of default in the payment of the fine he shall stand committed until the fine shall have been paid, "or until said respondent shall have been discharged according to law."    This is a proper judgment in such cases.    *Kettles v. People,* 221 Ill. 221, 223; *McDonald v. People,* 86 Ill. App. 558.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*