## The People of the State of Illinois, Defendant in Error, v. Eugene McCaffrey and Frank McDonnell, Plaintiffs in Error.

### Gen. No. 28,654.

1. CONTEMPT—*when contempt is criminal in nature.* Alleged contempt committed by attorneys at law is criminal in nature and triable on the petition and verified answers of such attorneys where it is alleged to consist in the procuring of an order in habeas corpus in the superior court of one county for the custody of a child through the intentional and wilful concealing by such attorneys of the existence of a valid and final order of adoption of such child previously entered in the county court of another county and of the proceedings culminating therein, together with

The People v. McCaffrey et al., 232 Ill. App. 462.

the facts relative to a habeas corpus proceeding by the adoptive parents of such child in which they were awarded the custody of the child as against respondents' client.

2. CONTEMPT—*when shown by undisputed allegations of petition in contempt.* Attorneys at law who represented the father of a child in proceedings to secure the custody of such child from the petitioners, the adoptive parents, are shown by the undisputed material allegations of the petition to have been guilty of contempt where such allegations show that respondents, by intentionally and wilfully concealing from the court the existence of a valid final order of adoption in a proceeding wherein their client appeared represented by them, in which his unfitness for the custody of the child was adjudged, the facts concerning such proceeding and also of a subsequent habeas corpus proceeding initiated by the adoptive parents to recover the custody of the child from the father which resulted in an order in their favor, obtained from the superior court of another county, under circumstances making appearance of the adoptive parents impossible, an order in habeas corpus for the custody of such child.

3. CONTEMPT—*sufficiency of showing in purgation.* Contempt committed by attorneys at law in procuring an order in habeas corpus for the custody of a child from its adoptive parents, by intentionally and wilfully concealing from the court making such order the existence of prior valid orders in adoption proceedings and a habeas corpus proceeding awarding the custody to the adoptive parents, which would have prevented the making of the order in favor of their client, is not purged by answers which do not dispute the material allegations of the petition which show contempt, but disclaim any intentional disrespect to the court or of any design to embarrass or obstruct the orderly administration of justice or of any intentional concealment of material facts from the court and aver respondents' belief in the justice of their client's cause, where the disclaimer is inconsistent with and contradicted by the contumacious acts done.

BARNES, J., dissenting.

Error by defendants to the Superior Court of Cook county; the Hon. HUGO PAM, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1923. Affirmed. Opinion filed March 11, 1924. Rehearing denied March 25, 1924.

**Statement by the Court.** It is sought by this writ of error to reverse an order of the superior court of Cook county, entered March 14, 1923, wherein each of

the respondents, McCaffrey and McDonnell, attorneys at law, was adjudged guilty of contempt of court, and each sentenced to jail "for a period of 10 days from the day of his commitment or until otherwise sooner released by due process of law" and to pay a fine of $500 to the clerk of the court, and that in default of such payment each be imprisoned in jail, there to remain until payment be made or until sooner discharged by due process of law.

The contempt proceedings were commenced by the filing of a petition by John Fahey and Mary Fahey (hereinafter referred to as the Faheys). Subsequently they filed an amended and verified petition, to which respondents filed separate and verified answers. In the amended petition it is asked that respondents be ruled to show cause, if they can, why they should not be held in contempt of court:

"for having interfered with and obstructed the orderly administration of justice by filing the petition for writ of habeas corpus in Kankakee County, in the State of Illinois, and the maintenance and prosecution of said cause as attorneys for the petitioner therein" (Roy Burr), "and for having violated the decree of this Honorable Court" (Judge Pam) "heretofore entered herein on January 10, 1923, and for having been instrumental in having the order of court entered by the Honorable Judge De Selm on January 12, 1923, nullifying and reversing the order heretofore entered herein on January 10, 1923, and for having refused to comply with the order of court heretofore entered herein on January 10, 1923."

From the amended petition and answers the following facts appear: In 1916, Roy Burr and Daisy Burr were married, and in October, 1917, Daisy Burr obtained a decree of divorce from Roy Burr, and she was given the custody and control of their child, Robert Burr, and it was ordered that Roy Burr pay her the sum of $12 per week for her support and that of the child until further order of court. After the entry of the decree she, together with the child, lived con-

tinuously at the home of her uncle and aunt, the Faheys, in Chicago, Illinois, until January 16, 1922, when she died intestate. Roy Burr failed to comply with the court's order as to payments for said support and maintenance. After the mother's death the child resided with the Faheys and was supported and cared for by them. In April, 1922, the Faheys filed their verified petition under the statute, in the county court of Cook county, for the adoption of the child, alleging that they were husband and wife and residents of the City of Chicago, that the child is about five years of age and upon the death of the mother was left in their care and custody, and that the father resides at Essex, Illinois. Reasons for the adoption are set forth, as are the material portions of the divorce decree, and it is further alleged that the father has at all times failed to provide a home or the necessities of life for the child. Service was had on Roy Burr and he filed an answer to the effect that he did not consent to the adoption, and that, although he is now residing in Chicago, his mother and sister, who have a large farm and home at Essex, Illinois, are willing and able to assist him in the care and education of the child. There was a protracted hearing and, before the entry of any decree, an amendment was made to the petition by adding the allegation that Roy Burr was not a fit and proper person to have the custody of the child for the reason that he had "abandoned" it. On June 27, 1922, the county court entered a decree of adoption, wherein the court found, inter alia, that Roy Burr was not a fit person to have the care and custody of the child in that he had abandoned it, that the guardian *ad litem* consented to the adoption, that the Faheys had sufficient ability to bring up the child and to furnish suitable nurture and education therefor, and that it was for the child's best interests that the adoption be made. No appeal was perfected from the decree, and the same has never been altered or vacated. On August 4, 1922, Roy Burr filed a petition for a writ

of habeas corpus in said superior court for the custody of the child, in which he set forth the divorce decree, the subsequent death of the child's mother, and the adoption proceedings and decree, and further alleged that the adoption decree "was void because of want of jurisdiction" in the county court to enter it. The writ was served and the child brought into court before Judge Miller. The Faheys, in their return, set forth the adoption proceedings and decree; alleged that the decree was valid and had not been reversed and that the superior court lacked jurisdiction, in a habeas corpus proceeding, to change the custody of the child or to review the action of the county court; and denied that the child was unlawfully detained by them. On August 10, 1922, after hearing arguments, Judge Miller ordered that the child be "placed in the custody of his father, Roy Burr," and thereupon, in open court, the child was given to the father and shortly thereafter he intrusted its care and custody to his mother, Mrs. Denis Burr, who resided at Essex, Kankakee County, Illinois. The Faheys sued out a writ of error from this Appellate Court (230 Ill. App. 143) to reverse Judge Miller's order and on December 16, 1922, the writ was made a supersedeas. Roy Burr here entered his appearance, by the respondent, Mc-Caffrey, as his attorney, but no brief in his behalf was filed. On December 30, 1922, the Faheys filed a petition for a writ of habeas corpus in said superior court for the custody of the child, the writ was ordered issued by Judge Pam, was served on Roy Burr and Mrs. Denis Burr, and the child was brought into court. In said petition the Faheys set forth all prior proceedings relating to the child, and alleged that it was residing with its grandmother, Mrs. Dennis Burr, at Essex, Illinois, and not with its father, Roy Burr; that the father was not so situated as to properly provide and care for it and that it was not receiving proper care and treatment; and that by reason thereof, and by reason of the issuance of said supersedeas, the child

should be returned to the Faheys pending the final determination of said writ of error suit. Respondent, McCaffrey, as attorney for Roy Burr and Mrs. Denis Burr, entered their special appearance "to contest solely the jurisdiction of the court," and on January 4 (the child and all other interested parties being in court before Judge Pam) filed a special plea on behalf of his clients, alleging that the court is "without jurisdiction of the subject-matter and of the parties," that the father had had the custody of the child by virtue of that relationship and by virtue of Judge Miller's order of August 10, 1922, and that since that date "the status of the child, the subject-matter of this habeas corpus hearing, has not materially changed." After protracted arguments, Judge Pam stated that he was going to overrule said special plea and remand the child to the custody of the Faheys, and inquired of McCaffrey whether or not he desired to stand by the special plea, to which inquiry the latter replied that he did, and requested that "additional time" be granted to his clients before the entry of the final order, so as to enable them to determine what further action, if any, they would take in the matter, and thereupon the cause was continued. On January 9, Frank McDonnell (the other respondent herein) was employed by McCaffrey to assist him in the pending matter. On January 10, 1923, all interested parties, including the child, were again in Judge Pam's court, and further arguments were had, participated in by both McCaffrey and McDonnell. Finally, a draft order was prepared, inspected by McCaffrey and McDonnell and entered, overruling the objections to the court's jurisdiction and awarding the custody of the child to the Faheys, and the child was taken by them to their home in Chicago. No appeal has been taken from this order, or writ of error prosecuted, and the same has not been altered or vacated but remains in full force and effect.

On the following day (January 11, 1923), McCaffrey and McDonnell, as attorneys for Roy Burr, caused to be filed in the circuit court of Kankakee county, Illinois, his petition for a writ of habeas corpus for the custody of the child, in which it is alleged the child is restrained of its liberty by the Faheys, but "is not detained by virtue of any order, judgment, decree or execution of any court of competent jurisdiction, State or Federal," and that Roy Burr obtained an order giving him the custody of the child in a proceeding had in the superior court of Cook county at the August, 1922, term of that court. The order of Judge Miller, entered on August 10, 1922, is set out in full, but no mention whatever is made in the petition of the adoption proceedings or decree, or the habeas corpus proceedings before Judge Pam or Judge Pam's final order. The petition contains the usual prayer, and underneath Roy Burr's signature is his affidavit, signed and sworn to before John A. Mayhew, a notary public, "this 10th day of January A. D. 1923" (the same day Judge Pam's order was entered). Underneath the affidavit are the words "McCaffrey and McDonnell, Attys. for Petitioner." The writ was issued and, on the night of January 11, Roy Burr, accompanied by a deputy sheriff of Kankakee county, entered the Faheys' home and took the child. Early on the following morning, January 12, before Judge De Selm, one of the judges of the circuit court in Kankakee county, the officer produced the child, and there was a hearing, at which McCaffrey, McDonnell and said Mayhew appeared as attorneys for Roy Burr and Roy Burr testified. McCaffrey, in response to questions asked by the judge, informed the court of the entry of Judge Miller's order, the pending writ of error suit to reverse that order, and the granting of the supersedeas, and of the entry of Judge Pam's order, which he claimed was void for want of jurisdiction. But McCaffrey did not advise the court as to the day when Judge Pam's order was entered,

and at no time during the hearing did he advise the court of the adoption proceedings or of the adoption decree. The Faheys were not in court nor were they represented. Thereupon, on the morning of January 12, Judge De Selm entered an order to the effect that, the Faheys not appearing, the child be placed in the custody of the father until the further order of the court. On the same morning one of the attorneys for the Faheys, having been advised of the happenings on the previous night, communicated from Chicago by long distance telephone with the clerk of said court in Kankakee county, and was advised that said order of Judge De Selm had already been entered. Later, on the same day, the Faheys, by said attorney, filed a written motion to vacate said order. The motion was argued before Judge De Selm, and McCaffrey appeared and opposed its allowance, whereupon the court took the motion under advisement, and on February 14, 1923, entered an order vacating the order of January 12, and further ordered that the child be restored to the Faheys forthwith. Up to the time of the entry of the contempt order of March 14, 1923, now in question, Roy Burr and Mrs. Denis Burr, although requested, have failed to restore the child to the Faheys, and it has not been so restored.

There is no denial of the material facts as above outlined in either of the separate answers of McCaffrey and McDonnell. They endeavor rather to justify their actions, and they disclaim any intent of committing any contempt of the superior court. (Judge Pam.)

In the answer of McCaffrey he states many conclusions and many of his "beliefs." He alleges, in substance, that he was first retained as the attorney for Roy Burr after the writ of error suit had been commenced in this Appellate Court to reverse Judge Miller's order, and was afterwards employed to represent him in the habeas corpus proceedings before Judge Pam; that he examined the transcript of the

record, then on file in this Appellate Court, of the proceedings before Judge Miller; that from said transcript he "observed" that in a purported copy of the *original* petition for adoption filed in the county court there was no allegation that Roy Burr was not a fit or desirable person to have the custody of the child, or that Roy Burr had abandoned the child, and that in his opinion the petition did not sufficiently allege the existence of conditions and requirements necessary for the county court "lawfully" to take from a natural parent the custody of his child; that he observed from another paper, contained in said transcript, the statement that the adoption decree had been entered on May 27, 1922 (instead of the correct date, June 27), and that the amendment to the adoption petition (to the effect that Roy Burr had abandoned the child) had been made after May 27; that on account of these observations he believed that the county court was without jurisdiction to enter the adoption decree; and that he did not receive any information contrary to said observations until after the disposition of the proceedings before Judge De Selm in Kankakee county. He does not state that he ever examined the records of the county court to ascertain when the amendment to the adoption petition was in fact filed and the actual date of entry of the decree. He further states that he observed from said transcript that, in the proceedings before Judge Miller, the judge had held that the county court's decree of adoption was null and void for want of jurisdiction and had ordered the child placed in the custody of its father. He admits that he appeared as attorney for Roy Burr and Mrs. Denis Burr in the proceedings before Judge Pam, and on their behalf filed a plea denying the court's jurisdiction, and made arguments in support of that contention and as to the effect of the supersedeas granted in said writ of error suit. He sets forth as "Exhibit A" to his answer a transcript of certain statements made by him and the

court during the argument, and alleges that he was "convinced" that the order as finally entered by Judge Pam "was a nullity." He further alleges that when the proceedings were commenced before Judge De Selm the child had actually been transferred to the Faheys and the proceedings before Judge Pam had been "finally determined." He admits that, after the termination of the proceedings before Judge Pam, he and McDonnell, as attorneys for Roy Burr, filed the habeas corpus petition before Judge De Selm in Kankakee county, and alleges that on the hearing he "informed the court fully and accurately of the prior proceedings relevant to the cause." He sets forth as "Exhibit B" to his answer a transcript of the proceedings before Judge De Selm, showing what statements he made at that hearing. This exhibit does not disclose that the court was advised of the prior adoption proceedings or of the entry of the adoption decree. He further alleges that he did not obstruct or interfere with the "process" of the superior court at any time; that in filing said petition before Judge De Selm he acted in the "sincere belief" that he had the right, and it was his duty, to seek to maintain the status of the child as established by the order of Judge Miller, and to seek a determination, before Judge De Selm, of the question whether Judge Pam had not exceeded his power and jurisdiction in restoring the child to the Faheys, in view of the fact that Judge Miller's order was then in force and effect and had not been reversed; and that he "had no intent to conceal" any material fact from Judge De Selm. He further alleges that, in thus questioning the jurisdiction of Judge Pam, he "did not intend to reflect" upon the superior court or said judge; that he was not contemptuous or disrespectful to the court in any way; that he believed that the justice of the cause was with the child's father, who was a fit person to have the custody of the child, that the father and the grandmother were nearer and dearer to the child

than the Faheys (the uncle and aunt of the child's mother) and that it would be for the child's best interest that the father be given its custody; and that he at all times had the greatest respect for the dignity of said superior court.

Similar allegations are contained in the answer of Frank McDonnell. He states in substance that he knew nothing about the litigation concerning the custody of the child until January 9, 1923, when he was employed by McCaffrey; that the latter informed him of all prior proceedings and what he (McCaffrey) had observed from his examination of said transcript on file in this Appellate Court; that after several conferences with McCaffrey, and after examining many legal authorities, he "concluded" that Judge Pam had no power or jurisdiction to review or in any manner impair the order entered by Judge Miller, which then stood unvacated and unreversed; that he did not interfere at any time with the deliberations of Judge Pam or the "process" of the court; that on January 10, 1923, after Judge Pam had entered his order, the child was given into the custody of the Faheys, and thereby the proceedings before Judge Pam were "finally determined"; that it then "appeared clear" to respondent that it was proper to test in some manner which of the two orders (Judge Miller's or Judge Pam's order, both of the superior court) was entitled, as a matter of law, to respect and obedience, and that "the only expeditious way of determining that question and the only way that would be of practical consequence to the parties involved" was to submit the matter upon petition for habeas corpus "to the circuit court of Kankakee county"; that he assisted in the preparation of said petition, "and, in said petition, alleged that said Robert Burr was not detained by virtue of any judgment or decree of any court of competent jurisdiction"; that said allegation was "general in form" and "was not intended to conceal" the fact of the entry of Judge Pam's order, but "seemed

to respondent to be just as efficient to raise the question to be presented" as though the proceedings before Judge Pam and his order had been set up in detail and in full, and at the time said petition was drafted it was respondent's "understanding and intention" that "the question of the validity" of Judge Pam's order would be presented to Judge De Selm so that he might pass upon it; that respondent was present on January 12, at the hearing before Judge De Selm, at which time McCaffrey "informed the court fully and accurately of the prior proceedings relevant to the cause," as appears from said transcript of the proceedings, "Exhibit B"; that in filing said petition before Judge De Selm as an attorney for Roy Burr, respondent "acted in the sincere belief" that he had the right, and it was his duty, to seek to maintain the status of the child as it had been established by the order of Judge Miller, and that he had the right, before Judge De Selm, to seek the determination of the question whether Judge Pam, by his order, had not exceeded his power and jurisdiction, and that he (McDonnell) "had no intent to conceal" from Judge De Selm any fact material to the determination of the question; and that he (McDonnell) gave to said circuit court "all of the information pertinent to the inquiry there *that came to his mind* relevant to the issues there presented." He further states that in thus questioning the jurisdiction of Judge Pam he did not intend to reflect upon said superior court, or said judge; that in doing said matters and things he was not contemptuous or disrespectful in any way; and that he had the greatest respect for the dignity of said superior court.

In the contempt order in question the court made full findings of facts, and further found in substance that the child was not then in its jurisdiction; that neither respondent had offered to disclose its whereabouts or to assist the court in restoring it to the Faheys; that said circuit court of Kankakee county

was not advised of said adoption proceedings in the county court; that the habeas corpus writ was issued by said circuit court by virtue of the allegations contained in the petition; that respondents, at the time they filed the habeas corpus petition in said circuit court, well knew of said adoption proceedings and that the petition in said adoption proceedings had been amended before the adoption decree had been entered by the county court; and that the filing of the petition in said circuit court of Kankakee county by respondents, "without making to said court a full disclosure in said petition, or otherwise, of all the facts, constituted an obstruction to justice and to the orderly administration of justice"; that "the maintenance and prosecution of said cause by the respondents, as attorneys for said Roy Burr, constituted an abuse of the process of the court, an open violation of the decree of this court, and a breach of the duties which said respondents owed to this court, as attorneys and counselors of this court; and that said respondents, Eugene McCaffrey and Frank McDonnell, are in contempt of this court."

Since the entry of the contempt order in question this Appellate Court (in said writ of error suit prosecuted to reverse Judge Miller's order) on June 26, 1923, reversed Judge Miller's said order. See 230 Ill. App. 143. In the opinion this court held in substance that the county court in the adoption proceedings had power and jurisdiction to enter the adoption decree, and that Judge Miller was without power to enter his order, awarding the custody of the child to the father, in a habeas corpus proceeding.

Morse Ives, for plaintiffs in error.

John T. Duffy, for defendant in error.

Mr. Presiding Justice Gridley delivered the opinion of the court.

In *Stuart v. People,* 4 Ill. (3 Scam.) 395, 404, it is said: "Contempts are either direct, such as are offered to the court while sitting as such, and in its presence, or constructive, being offered, not in its presence, but tending, by their operation, to obstruct and embarrass, or prevent, the due administration of justice." And it is held in the *Stuart* case (p. 405) that the power to punish for contempts is inherent in every court of justice, and that in this power "would necessarily be included all acts calculated to impede, embarrass, or obstruct the court in the administration of justice," and that "such acts would be considered as done in the presence of the court." The doctrine of the *Stuart* case has been reaffirmed in *People v. Wilson,* 64 Ill. 195, 211; *Dahnke v. People,* 168 Ill. 102, 106, and subsequent cases. In the *Dahnke* case (p. 107) it is said that "the power of the court in the matter of contempt cannot be defined within any limits, and that the primary question in all cases of alleged contempt is 'whether there has or has not been an interference or an attempt to interfere with the due administration of justice.' "

Proceedings for contempt of court are of two classes: Those which are criminal in their nature, which are sometimes called common-law contempts, and those which are intended as purely civil remedies which ordinarily arise out of the alleged violation of some order entered in the course of a chancery proceeding. (*People v. Seymour,* 191 Ill. App. 381, 388.) In *O'Brien v. People,* 216 Ill. 354, 368, it is said: "When the contempt consists of something done or omitted in the presence of the court tending to impede or interrupt its proceedings or lessen its dignity, or out of its presence in disregard or abuse of its process, the proceeding is punitive or criminal, and the penalty is inflicted by way of punishment for the wrongful act and to vindicate the authority and dignity of the people, as represented by their judicial tribunals.

In such cases the application for attachment may be made in the original cause, yet the contempt proceeding will be a distinct case criminal in its nature. Cases of this kind are clearly distinguished from cases where the parties to a civil suit, having the right to demand that the other party do some act for their benefit, obtain an order from a proper court commanding the act to be done, and upon refusal the court, by way of executing its orders, proceeds as for contempt for the purpose of advancing the civil remedy of the other party to the suit.'' (See also, *Hake v. People*, 230 Ill. 174, 185; *People v. Elbert*, 287 Ill. 458, 463; *People v. Peters*, 305 Ill. 223, 226.) In the *Elbert* case it is said: ''The dividing line between the acts constituting criminal and those constituting civil contempts becomes indistinct in those cases where the two gradually merge into each other. In those cases contempts have been classified and punished by the courts in some jurisdictions as criminal contempts and in others as civil contempts. * * * In most cases where they thus rest on the boundary line they are both civil and criminal contempts, and so far as the rights of the contemnors are concerned may be punished as either.'' As to the present case, we are of the opinion that the alleged contempt is one which should be considered as criminal in its nature. And counsel for respondents in their printed brief here filed contend that the charge of contempt should be so considered.

It is the law of this State that, if the offense charged is a criminal contempt, the respondent may file a verified answer to the rule, or he may insist that interrogatories be filed for him to answer under oath, and if his verified answer in either case is sufficient to purge him of the alleged contempt, he must forthwith be discharged. (*People v. Seymour*, 191 Ill. App. 381, 391; *Welch v. People*, 30 Ill. App. 399, 409; *O'Brien v. People*, 216 Ill. 354, 369; *Hake v. People*,

230 Ill. 174, 185; *Oster v. People,* 192 Ill. 473, 479; *Storey v. People,* 79 Ill. 45, 52.) In the *Hake* case it is said: "In cases of common-law jurisdiction for contempt the defendant is tried upon his answer made to interrogatories filed. No other evidence is heard. If the answers prove false the remedy is by indictment for perjury, but if the party purges himself of the contempt by his answer he will be discharged." In the *Oster* case it is said: "In criminal contempts alleged to have been committed out of the presence of the court, if the contemnor's answer is sufficient to acquit of the charge he must be discharged." In the *Storey* case it is said: "The defendant determines, by his own answer, under oath, whether he is guilty of that which is charged against him as a contempt of court, and if he fails thereby to purge himself, the court may, at once, impose the punishment." In *People v. Seymour,* 272 Ill. 295 (affirming 191 Ill. App. 381) it is said (p. 301): "If, on the other hand, the answer admits the material facts charged to be true, and the facts constitute a contempt of court, punishment is imposed upon the answer. In either case no issue of fact is or can be formed."

In view of the foregoing authorities we think that two questions of law are before us for decision, viz.: (1). Do the undisputed and material facts as alleged in the petition constitute a contempt of court? And (2). If so, have the respondents, or either of them, purged themselves of the contempt by their answers?

The petition of the Faheys for the adoption of the child was filed in the county court in April, 1922, and before the entry of the decree of adoption the petition was amended by adding the allegation to the effect that the father, Roy Burr, was not a fit person to have the custody of the child in that he had abandoned it. He appeared in court and contested the proposed adoption. The county court had jurisdiction of the subject-matter and of the parties, and under the

amended petition, had power and jurisdiction to enter the decree of adoption of June 27, 1922. By the decree the child became the adopted child of the Faheys, and the decree has never been vacated or reversed. The father did not prosecute any appeal from the decree or sue out any writ of error. In August, 1922, he sought to obtain the custody of the child by a writ of habeas corpus. In his petition for such writ he alleged that the decree of adoption "was void because of want of jurisdiction" in the county court to enter it. On August 10, 1922, after a hearing on the writ, the court (Judge Miller) ordered that the child be placed in the custody of the father, and the child was then and there given him. As the county court had power and jurisdiction to enter the adoption decree, the order of Judge Miller, entered in a habeas corpus proceeding, was without warrant of law, because of want of power to enter it, and was void. (*People v. Foster*, 104 Ill. 156, 158; *People v. Zimmer*, 252 Ill. 9, 13; *People v. Windes*, 283 Ill. 251, 253; *People v. Siman*, 284 Ill. 28, 31; *People v. Fisher*, 303 Ill. 430, 434.) After the entry of said order, the Faheys sued out a writ of error from this Appellate Court to reverse it, and on December 16, 1922, on their motion, a supersedeas was granted. This did not have the effect of setting aside Judge Miller's order, it being self-executing or one that had been executed. (Elliott's Appellate Procedure, secs. 389, 392; *Brown v. Schintz*, 109 Ill. App. 598, 601; 2 L. R. A. [N. S.] p. 244, note.) On December 30, 1922, the Faheys filed a petition for a writ of habeas corpus before Judge Pam to have the custody of the child restored to them, which had unlawfully been taken from them by Judge Miller's order. About this time McCaffrey was first employed as attorney for Roy Burr and he entered the latter's special appearance and that of Mrs. Denis Burr (the child's grandmother in whose actual possession it then was) and filed a plea in their behalf, alleging that the court (Judge

Pam) was "without jurisdiction of the subject-matter and of the parties." Whether Judge Pam had power or jurisdiction to enter the order he did, restoring the custody of the child to the Faheys, depended, as it seems to us, upon whether Judge Miller had power to enter the particular order entered by him, and Judge Miller not having that power, we think that Judge Pam had power and jurisdiction, in that habeas corpus proceeding, to enter the order restoring the child to the custody of the Faheys. (*People v. Siman*, 284 Ill. 28, 32; *People v. Whitson*, 74 Ill. 20, 23.)   In the *Siman* case it is said: "Jurisdiction in a particular case is not only the power of the court to hear and determine but also the power to render the particular judgment entered, and every act of the court beyond its jurisdiction is void.  *  *  * The jurisdiction of a court or judge to render a judgment is always a proper subject of inquiry on habeas corpus, and is, in fact, the primary, and generally the only, subject open to inquiry.  If such court or judge had no jurisdiction to render the judgment and sentence complained of the judgment is void, and one imprisoned under and by virtue of it may be discharged from custody on habeas corpus."  And Judge Pam's order was one that should be obeyed, even if erroneous (*Tolman v. Jones*, 114 Ill. 147, 154; *Leopold v. People*, 140 Ill. 552, 557); and also one which could not be reviewed or successfully assailed in another habeas corpus proceeding instituted before any other court of equal general jurisdiction. (*People v. Siman*, 284 Ill. 28, 31.)   And it is to be presumed that the respondents, McCaffrey and McDonnell, knew that this was the law.  Yet, on January 11, 1923, the next day after the entry of Judge Pam's order, they, as attorneys for Roy Burr, caused to be filed in the circuit court of Kankakee county, his petition for a habeas corpus writ for the custody of the child, which petition, it is admitted, respondents assisted in drafting.  No mention is made in said peti-

tion of the habeas corpus proceedings before Judge Pam, or of the adoption proceedings or decree of adoption, but it is alleged therein that the child "is not detained by virtue of any order, judgment, decree or execution of any court of competent jurisdiction." Were it not for this allegation, Judge De Selm, to whom the petition was presented, could not lawfully have issued the writ. (Habeas Corpus Act, secs. 3, 21 [Cahill's Ill. St. ch. 65, ¶¶ 3, 21]; *People v. Superior Court*, 234 Ill. 186, 198.) The petition was so drafted as to conceal from the circuit court of Kankakee county (Judge De Selm) the true facts. The writ was issued and during the following night the child was taken by the officer from the home of the Faheys in Chicago and conveyed to Kankakee. Early on the following morning, and before a reasonable time had elapsed for the Faheys or their counsel to reach Kankakee, there was a hearing, at which both of the respondents were present, and although during the hearing the court was partially advised of the proceedings before Judge Pam, it does not appear that the court was informed by respondents, or anyone, of the date of the entry of Judge Pam's order or of the adoption proceedings or decree, regarding all of which respondents then had full knowledge. It sufficiently appears that because of these concealments of the true facts the court entered the order awarding the custody of the child to the father until further order, and the father took the child into his custody. Subsequently, after being more fully advised, the court (Judge De Selm) vacated said order, and further ordered that the child be restored to the custody of the Faheys. This last-mentioned order has never been complied with, and at the time of the entry of the contempt order in question, both the father and the child were not within the jurisdiction of the superior court of Cook county.

Under the material facts, which are undisputed, we are of the opinion that the acts and concealments of

the respondents were calculated to, and did, impede and obstruct the orderly administration of justice and disclosed a wilful disregard of the power and authority of said superior court, presided over by Judge Pam, and were a violation of the order of said court, which it had the power and jurisdiction to enter, and that said acts and concealments were contemptuous. It appears that, immediately after Judge Pam's order had been entered, the child was forthwith transferred to the Faheys; and it is argued by respondents' counsel that the proceedings before Judge Pam had been "terminated" and the order "executed," and that there was no immediate interference by respondents as regards the "process" of the court in restoring the child to the Faheys' custody. We are of the opinion, however, that the actions of respondents disclose a purpose on their part to endeavor, if possible, to set at naught Judge Pam's order, otherwise than by suing out a writ of error, just as much as if they had caused a physical interference with the carrying out of the same after the parties had left the court room, or after the child had reached the Faheys' home. At the conclusion of the arguments before Judge Pam on January 4, 1923, the court stated that he had decided to restore the child to the custody of the Faheys, whereupon McCaffrey requested that the entry of the final order be postponed in order to give his clients time to determine what further action they might take in the matter, and the court granted the requested continuance to January 10. In the interim, on January 9, McCaffrey employed McDonnell to assist him in the pending matter, and it is evident that preparations were made shortly thereafter for the filing of the petition of habeas corpus before Judge De Selm in Kankakee county. Although that petition was not filed until the day after Judge Pam finally entered his order, it appears to have been signed and sworn to by Roy Burr in Kankakee county

on the very day that Judge Pam entered his order, and the petition is as noticeable for the facts not alleged therein as the facts alleged. Apparently, respondents sought to accomplish the purpose mentioned through court procedure in a county other than the one in which the child then was, and by concealing from the court the true facts and state of affairs. And we do not think that the fact that Judge Pam's order had been "executed," in that the child had actually been transferred to the Faheys, can excuse respondents. The effect of that order was that the Faheys were entitled to the continuous custody of the child, which had been adopted by them by virtue of the unreversed adoption decree. In *People v. Mortenson*, 224 Ill. App. 221, it appears in substance that, in a controversy as to the right to the office of superintendent of schools in Chicago, the circuit court of Cook county had determined in November, 1919, in quo warranto proceedings, that one of the claimants, Chadsey, was the duly qualified appointee to such office and the legal incumbent thereof for a term expiring in March, 1923, and that the other claimant, Mortenson, be ousted from the office and be required to surrender to Chadsey the rooms assigned and occupied by such superintendent. Chadsey was permitted finally to enter said rooms and attend meetings of the school board and to that extent the order of the court was complied with, or "executed." Subsequently, the attorney for the board and certain members caused to be drafted and adopted by the board certain rules which, in effect, transferred practically all of the statutory duties, prerogatives and authority of the superintendent of schools to the "associate" superintendent, Mortenson, who had been ousted as superintendent. It was *held* that the adoption of these rules was a violation of the order of the court finding that Chadsey was superintendent of schools and entitled to the office, inasmuch as the rules purported to take away from Chadsey the substance of the office,

leaving him but the empty shell, and obviously was an attempt to defeat or circumvent said order, and was contemptuous. And the Appellate Court affirmed the order of the circuit court, entered in subsequent contempt proceedings, wherein certain parties responsible for the passage of said rules and the acts complained of were sentenced to jail, or fined, or both for contempt of court. (See also, *People v. Peters,* 305 Ill. 223, 229.)

And we do not think that respondents, or either of them, by their answers have purged themselves of the contempt as alleged. The material facts are not denied. Whether the answer of either respondent is sufficient to acquit him of the charge is a question of law. (*People v. Seymour,* 191 Ill. App. 381, 393.) And we cannot accept, as a reason for discharging respondents, the disclaimer of each of any intentional disrespect to the court, or of any design to embarrass or obstruct the orderly administration of justice, or of any intent to conceal anything from Judge De Selm. (*People v. Wilson,* 64 Ill. 195, 212.) The disclaimer is inconsistent with the acts done and is contradicted by them. (*People v. Seymour,* 191 Ill. App. 381, 394.) And the belief of each of the respondents, as stated in the answers, that the justice of the cause was with the father, that he was a fit person to have its custody as against the uncle and aunt of the child's mother, and that it was for the child's best interests for the father to have its custody, is no justification for their acts. (*People v. Seymour,* 272 Ill. 295, 303.)

Our conclusion is that the order of the superior court, entered March 14, 1923, wherein the respondents, and each of them, were adjudged guilty of contempt of court, and fined and sentenced to jail, in the respective amounts and for the respective periods, as above mentioned, should be affirmed, and accordingly it is so ordered.

*Affirmed.*

FITCH, J., concurs.

MR. JUSTICE BARNES dissenting: Without attempting a full discussion of the subject, I am of the opinion the order should be reversed, however much the course of plaintiffs in error is subject to censure.

It is familiar law that the writ of habeas corpus cannot be employed to perform the function of a writ of error. I think it was not only so used in this case, but also in disregard of the Habeas Corpus Act. Judges Pam and Miller were judges of the same court. Each had the power of a judge of that court to issue a writ of habeas corpus upon a proper petition, but neither could by such writ discharge a person from custody given by the order of the other, or upon the order of any other court of competent jurisdiction. Such power is expressly prohibited by the Habeas Corpus Act. Section 21 [Cahill's Ill. St. ch. 65, ¶ 21] thereof provides that no person shall be discharged under the provisions of the act if he is in custody "by virtue of a final judgment or decree of any competent court of civil or criminal jurisdiction, or of any execution issued upon such judgment or decree," etc. However erroneous was Judge Miller's order, evidently entered in violation of that section, it was that of a court of competent jurisdiction to entertain a habeas corpus proceeding and placed the custody of the child with the father. Judge Pam's order discharges it from that custody. In whatever other cases the writ may be employed to remove one from detention under a void order, I think the statute expressly forbids its use in a case like this.

Besides, the pleadings before Judge Pam disclosed that this court then had exclusive jurisdiction of the cause under its writ of error. In disregard of that fact he assumed to use the writ to perform the very function for which this court is organized. If he could thus disregard its jurisdiction and assume such function on the theory that Judge Miller's order was void, then another court could in turn review his judgment on the same theory, and so the infant by a sort of legal

shuttlecock would be bandied back and forth from the custody of one respondent to another as long as a court could be found to uphold such an indefensible practice.